

July 2012

# GUN CONTROL

# States' Laws and Requirements for Concealed Carry Permits Vary across the Nation



**GAO**

Accountability * Integrity * Reliability

GAO-12-717



# GUN CONTROL

## States' Laws and Requirements for Concealed Carry Permits Vary across the Nation

Highlights of GAO-12-717, a report to congressional requesters

## Why GAO Did This Study

According to state reporting to GAO, there were at least 8 million active permits to carry concealed handguns in the United States as of December 31, 2011. States and local authorities control the issuance of concealed carry permits. Applicants who wish to obtain such permits are required to meet certain state eligibility requirements, such as minimum age and the lack of a felony conviction. States also decide which other states' permits to honor. Typically, states enter into reciprocity agreements that establish which out-of-state permit holders can carry concealed firearms within each state. In recent years, Members of Congress have introduced legislation that would require each issuing state to recognize any permit. GAO was asked to provide information on the status of concealed-carry permitting. This report describes (1) the extent to which states allow concealed carry permits, and how select states' eligibility requirements and recognition of other states' permits differ, (2) what processes select states use to help ensure they revoke permits when holders no longer meet eligibility requirements, and (3) how law enforcement officials in select states determine whether permits they encounter are current and valid. GAO gathered information on the number of permits, laws, issuing authorities, and reciprocity agreements for 50 states and the District of Columbia, and conducted a case study on 9 states that issue permits. GAO selected these states to reflect differences among states' eligibility requirements, state reciprocity of permits, and permit-issuing processes; the results cannot be generalized across all states but provide a broad understanding of the different requirements and processes states utilized in issuing permits.

View GAO-12-717. For more information, contact Carol R. Cha (202)512-8777 or chac@gao.gov.

## What GAO Found

The number of states allowing concealed carry permits is increasing, and states broadly differ in eligibility requirements and the extent to which they have reciprocity agreements. In June 2002, 7 states and the District of Columbia prohibited the concealed carry of handguns. As of March 2012, individuals can carry concealed handguns in all but 1 state (Illinois) and the District of Columbia (see fig. below). "Shall-issue" states—in which issuing authorities are required to issue a permit to an applicant that fulfills the objective statutory criteria—generally issue more permits than states with greater discretion in granting permits ("may-issue" states). Because of differing eligibility requirements, some states would issue a permit to an applicant, while others would not. For example, some states define what constitutes a disqualifying felony differently or have different firearms training requirements. As of March 2012, 39 states that issue permits and Vermont (permits not required) recognize concealed carry permits from other states. Of the 9 states that do not grant reciprocity, 8 are may-issue states.

**State Concealed Carry Permit Designation as of 2012**



Source: GAO analysis on state laws.

Issuing authorities from all 9 states included in GAO's case study stated that they take action to confirm an individual's continued eligibility to hold a permit as part of the permit renewal process; and issuing authorities from 8 of these 9 states reported using mechanisms to monitor resident permit holders' continued eligibility between issuance and renewal. In these 8 states, issuing authorities told GAO that they are notified if a permit holder commits a disqualifying act within their state through law enforcement or state databases. After detecting a disqualifying criminal offense or other disqualifying factors, each of the 9 states begins the revocation process by notifying the permit holder. The states have varying retrieval processes, and 3 of them have authority to impose a penalty for failure to surrender a revoked permit or continuing to possess one.

Law enforcement in the 9 case study states that issue permits told GAO that when encountering permits, such as during routine traffic stops, they visually check them and can take additional steps, such as checking state databases, as needed, to determine whether the permits are current and valid.

# Contents

| Letter | | 1 |
|---|---|---|
| | Background | 5 |
| | States Allowing Concealed Carry Permits Have Increased, but Eligibility Requirements and Extent of Reciprocity Differ | 8 |
| | Select States Reported Monitoring if Certain Permits Should Be Revoked and Having Processes to Revoke Them when Needed | 23 |
| | Law Enforcement in Select States Visually Check Permits to Verify Validity, among Other Actions | 29 |

| Appendix I | Case Study State Summaries | 33 |
|---|---|---|

| Appendix II | Objectives, Scope and Methodology | 68 |
|---|---|---|

| Appendix III | State Issuing Authority, as of March 2012 | 71 |
|---|---|---|

| Appendix IV | State Concealed Carry Permit Designation, as of March 28, 2012 | 73 |
|---|---|---|

| Appendix V | Number of Valid Permits | 75 |
|---|---|---|

| Appendix VI | Approximate Total Number of Active Permits by Residency | 78 |
|---|---|---|

| Appendix VII | State Reciprocity, as of March 2012 | 80 |
|---|---|---|

| Appendix VIII | GAO Contacts and Staff Acknowledgments | 84 |
|---|---|---|

**Tables**

| | Table 1: Change in States' Concealed Carry Permit Designation, 2002 and 2012 | 8 |
|---|---|---|

Table 2: Case Study States' Specific Disqualifiers for Concealed
Carry Permits                                                        17
Table 3: Case Study States' Training Requirements to Qualify for a
Concealed Carry Permit                                               18
Table 4: Approximate Numbers of Revoked and Issued Permits,
2011                                                                 26
Table 5: Physical Characteristics of Case Study States' Concealed
Carry Permits                                                        30
Table 6: State Concealed Carry Permit Designation, as of March
2012                                                                 73
Table 7: Number of Valid Permits (as Reported by States) as of
December 31, 2011, unless noted otherwise                           75
Table 8: Status for States that issue to Nonresidents, as of
December 31, 2011, unless otherwise noted                           78

Figures

Figure 1: State Concealed Carry Permit Designation for 2002 and
2012                                                                  9
Figure 2: State Concealed Carry Permits Profile 2011                 11
Figure 3: State Reciprocity as of March 2012                         20
Figure 4: Length of Time Permit Is Valid for Initial Applicants      24

**Abbreviations**

| | |
|---|---|
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives |
| CA DOJ | California Department of Justice |
| CCDW | Carry of Concealed Deadly Weapon |
| CWP/CWL | Concealed Weapon Permit/License |
| CHL/CHP | Concealed Handgun License/Permit |
| CJIS | Criminal Justice Information Services |
| CPL | Concealed Pistol License |
| DUI | driving under the influence |
| DWI | driving while intoxicated |
| FBI | Federal Bureau of Investigation |
| FOID | Firearm Owner's Identification Card |
| III | Interstate Identification Index |
| LTC/LTCF | License To Carry (Firearms) |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NICS | National Instant Criminal Background Check System |
| NRA | National Rifle Association |
| Nlets | International Justice and Public Safety Network |

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.



**United States Government Accountability Office**
**Washington, DC 20548**

July 17, 2012

The Honorable Dianne Feinstein
Chair, Caucus on International Narcotics Control
United States Senate

The Honorable F. James Sensenbrenner, Jr.
Chairman, Subcommittee on Crime, Terrorism, and Homeland Security
Committee on the Judiciary
House of Representatives

In 2010, approximately 118 million handguns were available for sale to, or were possessed by, civilians in the United States.[1] States regulate if, where, and how their residents can carry handguns—openly or concealed.[2] According to state reporting, there were approximately 8 million active concealed carry permits in the United States as of December 31, 2011.[3] Through the years, gun rights and gun control advocates have debated the efficacy of carrying a concealed handgun and constitutionality of the right to carry a concealed handgun. The debates have included such issues as who may legally carry a concealed handgun and where the concealed handgun may be legally carried (i.e., state parks, government buildings, public arenas, etc.), among other issues. State and local authorities control the issuance of concealed carry permits.[4] Applicants who wish to obtain such permits are required to meet

---

[1]GAO estimate based on Congressional Research Service *Report Gun Control Legislation*, (March 12, 2012) RL 32842 p. 5 and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) *Firearms Commerce in the United States Annual Statistical Update 2012* (May 4, 2012).

[2]For the purposes of this report, we will refer to firearms and weapons as handguns (i.e., pistols and revolvers)—although some states' permits also define weapons as knives, rifles, and billy clubs, and so forth.

[3]This number is an estimate based upon state reporting to GAO. Given that many states reported approximate numbers and some states that issue permits were unable to provide the number of permits, the number is likely understated.

[4]For the purposes of this report, we will refer to all permits as concealed carry permits. States use different terms for licenses or permits to carry a concealed firearm, such as Concealed Handgun License/Permit (CHL/CHP),Concealed Weapon Permit/License (CWP/CWL), Concealed Firearm Permit/License, License To Carry (Firearms) (LTC/LTCF), Carry a Concealed Deadly Weapon License (CCDW), Concealed Pistol License (CPL), and so forth.

certain state eligibility requirements. For example, in many states, a person must be at least 21 years old and not have any felony convictions to receive a permit.[5] Currently, state law determines whether and to what degree to honor other states' permits. Typically, states enter into reciprocity agreements that establish which out-of-state permit holders can carry concealed firearms within each state. Congress has considered the issue of concealed carry permitting and the concept of national reciprocity. Most recently, Members of the 112th Congress have proposed legislation that would address certain aspects of concealed carry permitting as well as national reciprocity.[6] Proposed legislation currently pending in Congress would provide national reciprocity or allow individuals that have a concealed carry permit issued from one state to be eligible to carry a concealed weapon in any other state that issues concealed carry permits. Other proposed legislation would require states to have minimum standards for the process of issuing concealed carry permits as well as minimum eligibility requirements to attain a permit. Both gun rights and gun control advocates have raised concerns with a

---

[5]For example, Arizona specifically requires, among other things, that an individual be 21 years of age or older and have not been convicted in any jurisdiction of a felony unless that conviction has been expunged, set aside, or vacated or in certain other limited circumstances under Ariz. Rev. Stat. § 13-3112(E). For more information on select states' eligibility requirements for concealed weapons permits, see appendix I.

[6]For example, one proposed bill, H.R. 822, the National Right-to-Carry Reciprocity Act of 2011, would generally allow persons with valid state-issued concealed concealed firearms permits or licenses to carry a concealed firearm in any other state that also issues concealed firearms permits or licenses, or in any other state that does not generally prohibit the carrying of concealed firearms, subject to the same conditions and limitations (except as to eligibility to possess or carry) imposed by federal, state, or local law that apply to residents of the state. This proposed bill would not create a national licensing scheme, but would require states that currently permit people to carry concealed firearms to recognize other states' valid concealed carry permits. Similarly to the National Right-to-Carry Reciprocity Act of 2011, another proposed bill, the Secure Access to Firearms Enhancement Act of 2011, H.R. 2900, 112th Cong. (2011), would generally allow a person who is not prohibited by federal law from possessing, transporting, shipping, or receiving a firearm, and is carrying a valid license or permit to carry a concealed weapon issued by a state, to carry a concealed weapon in any state in accordance with the terms of the license or permit and the laws of the state in which the firearm is carried concerning specific types of locations in which firearms may not be carried. The Common Sense Concealed Firearms Permit Act of 2011, S. 176, 112th Cong. (2011), another proposed bill, would require states that allow residents of the state to carry concealed firearms to establish a process to issue permits to residents of the state to carry concealed firearms and require that each resident of the state seeking to carry a concealed firearm in the state obtain a permit through this process. Further, in establishing a process, the state would have minimum requirements related to the process as well as the eligibility requirements of the applicant.

variety of proposed legislation related to concealed carry permitting and national reciprocity. In this context, you requested that we provide information on the status of concealed carry permitting. Accordingly, this report describes

- the extent to which states allow concealed carry permits, and how select states' eligibility requirements and laws regarding recognition of other states' permits differ;
- the processes select states use to help ensure they revoke permits when holders no longer meet eligibility requirements; and
- how law enforcement officials in select states determine whether permits they encounter are current and valid.

To answer these objectives, we contacted 48 states to obtain information on the number of valid concealed carry permits, denials, and revocations in each state.[7] Further, we gathered information for 50 states and the District of Columbia on their permit issuing laws (as they were as of March 2012), issuing authorities, and reciprocity agreements, among other things.[8] Moreover, we conducted a case study on 9 of the 50 states—Arizona, California, Florida, Georgia, Louisiana, Maryland, Tennessee, Texas, and Virginia—which we selected to reflect differing state eligibility requirements, state reciprocity of permits, and permit-issuing processes. From these states, we obtained and analyzed state data and information for 2011 on their eligibility requirements for issuing permits, procedures for monitoring permit holders' continued eligibility, and the number of permits issued and revoked. In the 9 states included in our case study that issue permits, we also interviewed state and local officials responsible for issuing permits to obtain information on applicable laws and procedures for issuing, monitoring, and revoking permits, and entering into reciprocity agreements. In addition, we interviewed state and local law enforcement officials in these states to obtain information on

---

[7]The remaining 2 states (Illinois and Vermont) and the District of Columbia do not issue concealed carry permits, so the number of valid permits does not apply to them. However, Vermont allows individuals to carry concealed handguns without a permit.

[8]On the basis of their permit issuing laws, states and the District of Columbia are generally designated as:(1) No-issue: carrying concealed is prohibited; (2) May-issue: the issuing authority has discretion to grant concealed carry permits to eligible individuals after considering additional subjective prohibitors, such as the applicant's history, character, and intended purpose for carrying a firearm; (3) Shall-issue: a concealed carry permit must be issued if no statutory reason for denial is revealed during a background check of the applicant; and (4) Permit not required to carry concealed.

processes they use to determine whether permits are valid when needed. The results from our case studies cannot be generalized across all states. However, the information obtained from these case studies provides a broad understanding of the different requirements and processes states utilize in issuing permits. To assess the reliability of the data and information, we asked the states about the systems they use to track the data, any steps taken to verify accuracy, and any limitations to the data. Our analysis was largely dependent on the availability of state data on the number of concealed carry permits. In some cases, statewide data were not available, and in other cases only data from certain time periods were available. As a result of these limitations, we determined that the data were sufficiently reliable solely to illustrate a minimum number of total active permits and approximate number of state-specific permits.

In addition, we obtained information from and interviewed federal officials with firearms-related experience and law enforcement responsibilities— the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Federal Bureau of Investigation (FBI). We obtained information from and interviewed FBI Criminal Justice Information Services (CJIS) Division officials on their federal databases that states query when screening concealed carry permit applicants' criminal history backgrounds. We obtained information and interviewed ATF headquarters officials and field special agents on their experience with and perspectives on state concealed carry permits. We also interviewed non-governmental groups representing a cross section of different views on concealed carry permit issues to gain an understanding of the historical context on these issues.[9] Appendix II contains a more detailed discussion of our objectives, scope, and methodology.

We conducted our work from August 2011 through July 2012 in accordance with all sections of GAO's Quality Assurance Framework that are relevant to our objectives. The framework requires that we plan and perform the engagement to obtain sufficient and appropriate evidence to meet our stated objectives and to discuss any limitations in our work. We believe that the information and data obtained, and the analysis conducted, provide a reasonable basis for any findings in this product.

---

[9]We interviewed organizations such as the Brady Campaign, Gun Owners of America, Mayors Against Illegal Guns, and the National Rifle Association.

# Background

## State Concealed Carry Laws

States' concealed carry laws can allow handgun owners, under certain conditions, to carry a loaded handgun either concealed on a person, in a vehicle, or in public. "Concealed carry" means a person may carry a handgun in a manner so that others cannot see the handgun. Generally, these laws apply to handguns—i.e. pistols and revolvers; therefore, for the purposes of this report, we use this category to define firearms.[10] States can allow civilians to carry a concealed handgun with or without a permit. Generally, states regulate whether individuals can carry handguns in public places such as schools, government buildings, and state and national parks, among other restricted places.

States can be classified into one of the following four categories based on their concealed carry laws:

- No-issue: The state does not permit residents or nonresidents to carry concealed handguns.
- May-issue: The state applies discretion in granting permits to carry concealed handguns.
- Shall-issue: Issuing authorities are required to issue a permit to an applicant that fulfills the objective statutory criteria if no statutory reason for denial exists.
- Permit not required: States do not require a permit to carry a concealed handgun.[11]

State laws also define which entities issue permits in their state. For example, some states have delegated the authority to issue permits to a single issuing authority (sometimes referred to as a centralized system), such as departments of public safety, while other states have multiple issuing authorities (referred to as a decentralized system), such as local law enforcement and local courts. There are also states with a mixture of

---

[10]States' concealed carry laws can also regulate the carrying of other weapons (e.g., knives).

[11]For the purposes of this report, we will refer to states' issue designation as, no-issue, may-issue, shall-issue, or permit not required. These designations exclude individuals permitted to carry concealed weapons under federal law, such as qualified law enforcement officers under 18 U.S.C. § 926B, or qualified retired law enforcement officers under 18 U.S.C. § 926C.

both centralized and decentralized systems. Of the 48 states that issue concealed carry permits (2 states do not issue permits—Illinois and Vermont), 20 states have centralized issuing authorities that process all applications and issue all permits for their state. Another 23 states have decentralized issuing authorities that process applications and issue permits at the jurisdictional level. The remaining 5 states use a combination of centralized and decentralized issuing authorities. These states generally utilize decentralized authorities for residents and a centralized authority for nonresidents (see app. III for a list of states' issuing authorities).

## Federal Role

There is no federal law specifically addressing the issuance of concealed carry permits at the state level. While the FBI does not have a direct role in the issuance of concealed carry permits, the FBI serves as a source for criminal history background information.[12] States may contact the FBI to obtain national criminal history records, if any, on applicants who apply for a concealed carry permit, but checking with the FBI prior to issuing a state permit is not required by federal law. Generally, states request name-based background checks from the FBI CJIS Division's National Instant Criminal Background Check System (NICS) to help them make a determination about who is prohibited from receiving or possessing a handgun and thus prohibited from obtaining a concealed carry permit.[13] During the course of a NICS background check, the applicant's descriptive information is checked against three computerized systems to determine if the person is eligible to obtain the handgun. Those systems include the National Crime Information Center (NCIC), the Interstate Identification Index (III), and the NICS Index.[14] If the applicant indicates

---

[12]Under 28 U.S.C. § 534(a)(1), the Attorney General has the authority to acquire, collect, classify, and preserve identification, criminal identification, crime, and other records.

[13]Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993); and GAO, Gun *Control: Opportunities to Close Loopholes in the National Instant Criminal Background Check System,* GAO-02-720 (Washington, D.C.: July 12, 2002).

[14]Specifically, a NICS check queries the following three information sources: (1) the National Crime Information Center (NCIC) which, *inter alia*, provides access to fugitive arrest warrants and protective orders; (2) the Interstate Identification Index (III), an index-pointer system that provides access to state criminal history records and FBI criminal history databases; and (3) the NICS Index, which contains information provided by local, state, tribal, and federal agencies on persons prohibited from receiving or possessing firearms under federal law that is not found in the NCIC or the III, e.g., information concerning persons who have been adjudicated as mentally defective or committed to a mental institution.

that he or she is not a U.S. citizen, a query is generated against the immigration and naturalization databases maintained by the Department of Homeland Security, U.S. Immigration and Customs Enforcement. ATF is the primary agency that enforces federal firearms laws regulating the commerce of firearms in the United States.

Although the federal government does not have a direct role in the issuance of concealed carry, there is federal law making it unlawful for individuals to receive or possess a handgun if they

> (1) have been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year;

> (2) are fugitives from justice;

> (3) are unlawful drug users or are addicted to any controlled substance;

> (4) have been adjudicated as mental defective or have been committed to a mental institution;

> (5) are aliens illegally or unlawfully in the United States, or certain other aliens admitted under a nonimmigrant visa;

> (6) have been discharged from the Armed Forces under dishonorable conditions;

> (7) have renounced their U.S. citizenship;

> (8) are the subject of certain types of a qualifying restraining order of a court; or

> (9) have been convicted in any court of a misdemeanor crime of domestic violence.[15]

## State Eligibility Restrictions

In practice, state determinations about eligibility to obtain concealed carry permits depend largely upon a person's criminal history. When determining who should receive a concealed carry permit, generally states use eligibility prohibitors that are similar to the federal eligibility

---

[15]18 U.S.C. § 922(g). Under 18 U.S.C. § 922(n), it is unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding 1 year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. In addition, pursuant to 18 U.S.C. § 922(x)(2), generally it is unlawful for any person who is a juvenile, a person that is less than 18 years of age, to knowingly possess a handgun or ammunition that is suitable for use only in a handgun.

restrictions that apply for possessing or receiving a handgun. For example, persons convicted of a felony, the subject of certain types of orders of protection, or who have been committed to a mental institution are disqualified from receiving a concealed carry permit in many states.

# States Allowing Concealed Carry Permits Have Increased, but Eligibility Requirements and Extent of Reciprocity Differ

Since 2002, more states are required by law to issue permits and more permits have been issued to eligible applicants, although some states still maintain discretion in determining who receives permits. States can issue to either residents of the state only or to both residents and nonresidents, depending on state law. Because eligibility requirements differ, an individual could obtain a permit in one state but not another. In addition, the number of states that recognize other states' permits has grown since 2002, but some states do not recognize any other states' permits.

## Since 2002, More States Required to Issue Permits to Eligible Applicants, though Some States Have Discretion in Who Receives a Permit

### More States Are Granting Permits

Over time, more states have changed their concealed carry laws either from no-issue or may-issue to shall-issue, as shown in table 1 below.

**Table 1: Change in States' Concealed Carry Permit Designation, 2002 and 2012**

| Number of States by Issue Designation | June 2002 | March 2012 |
|---|---|---|
| No-issue States that Prohibit the Concealed Carry of Handguns | 7 states and the District of Columbia | 1 state and the District of Columbia |
| Shall-Issue States | 29 | 39 |
| May-Issue States | 13 | 10 |
| States that Do Not Require a Permit to Concealed Carry | 1[a] | 4[b] |

Source: GAO analysis of state laws.

[a]The total number of states and the District of Columbia adds to 51.

[b]The total number of states and the District of Columbia adds to 55 in this analysis, because 4 states (Alaska, Arizona, Rhode Island, and Wyoming) are counted in two categories. Alaska, Arizona, and Wyoming do not require permits but are considered shall-issue; and Rhode Island provides may- and shall-issue authority. Rhode Island law provides for two mechanisms for obtaining a permit: the Rhode Island Attorney General has "may- issue" authority to issue permits under R.I. Gen. Laws § 11-47-18, and cities and towns have "shall-issue" authority, with limited discretion, to issue a permit, under R.I. Gen. Laws § 11-47-11.

Figure 1 below shows changes in issue designation, by state, for 2002 and 2012. See app. IV for a list of issue designation by state).

**Figure 1: State Concealed Carry Permit Designation for 2002 and 2012**



Source: GAO analysis on state laws.

## Shall-Issue States Issue More Permits than May-Issue States

Shall-issue states generally issue more permits than may-issue states relative to the state population. (See app. V for information on the approximate number of active permits by state as of December 31, 2011.) Of the 48 states that issue permits, 45 provided us with permit information. The top 5 states by ratio of active permits issued to the adult population (20 years or older) are shall-issue states—Utah, Iowa, South

Dakota, Georgia, and Indiana.[16] The ratio of active permits relative to adult population in Georgia and South Dakota (shall-issue states) is approximately 9 percent and 11 percent respectively, while the same ratio in California and Maryland (may-issue states) is approximately 0.1 percent and 0.3 percent respectively.[17] See figure 2 for state-specific profiles (see apps. III, IV, and V for detailed information on each state).

---

[16]Of these 5 states, Utah, Iowa, and Indiana issue to both residents and nonresidents, while Georgia and South Dakota issue to residents only.

[17]The states and percentages mentioned above include permits issued to both residents and nonresidents.

## Figure 2: State Concealed Carry Permits Profile 2011

*Move mouse over the name of each state for its concealed carry information.*



State issue classification

- No-Issue
- Permit not required
- May-issue
- Classified as both May and Shall-Issue
- Shall-issue
- Permit not required and Shall-Issue
- \* Represents number of resident and non-resident permits

Source: GAO analysis based on state reported data and state laws.

If applicants do not meet states' eligibility requirements, issuing authorities may deny the applicant a permit. Of the 45 states that reported permit information, 36 stated that they track denials and 29 provided some common reasons for the denials. For example, in 2011, Louisiana reported that the state denied approximately 400 permits and issued 12,000 concealed handgun permits (this includes original and renewal) citing failure to provide information within the specified time frames as required by the state as a common cause of denial. Likewise, Florida reported that from July 1, 2010, to June 30, 2011, the state issued approximately 124,000 concealed carry permits (this includes original), and denied approximately 2,000 permits. Like Louisiana officials, Florida officials identified failure to provide required information, such as proof of citizenship and legible fingerprint cards, as common reasons for denial.

## About Half of the States' Laws Provide Issuing Authorities Discretion, beyond Standard Eligibility Requirements, in Granting Permits

Authorities in 26 states (10 may-issue and 16 shall-issue) that grant permits have discretion in making permit decisions. While 10 may-issue states have broad discretion in making permit decisions, authorities in 16 shall-issue states have limited discretion in making permit decisions, if no statutory reason for denial exists. In Virginia (a shall-issue state), for example, issuing authorities stated that they can deny individuals whom the court finds are likely to use a weapon unlawfully or negligently to endanger others, based on a preponderance of the evidence.[18] Similarly, in Georgia (a shall-issue state), issuing authorities noted that applicants are subject to denial if the issuing authority determines, among other things, that the applicant is not of good moral character.[19] However, both Virginia and Georgia officials told us that although they have the discretion to deny a permit based on the factors mentioned above, it is rarely utilized.

In the 10 may-issue states, issuing authorities may issue a permit to eligible individuals after considering additional requirements, such as the

---

[18]Va. Code Ann. § 18.2-308(E)(13). The sheriff, chief of police, or attorney for the Commonwealth may submit to the court a sworn written statement indicating that, in the opinion of the sheriff, chief of police, or attorney of the Commonwealth, based upon a disqualifying conviction or upon specific acts set forth in the statement, the applicant is likely to use a weapon unlawfully or negligently to endanger others.

[19]Ga. Code Ann. § 16-11-129(d)(4). The judge of the probate court shall issue an applicant a license or renewal license to carry any weapon unless facts establishing ineligibility have been reported or unless the judge determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the statutory requirements to receive a license.

applicant's history and personal character. For example, Maryland issues permits to residents who, on the basis of an investigation, can demonstrate a good and substantial reason for needing a permit, and Maryland's issuing authority is responsible for making the determination of what constitutes a good and substantial reason.[20] For example, in one instance, Maryland's issuing authority denied a permit to a community activist working in anti-drug and anti-crime programs because, although the activist claimed that people had told him that others had made threats of bodily harm against him, the activist could not provide the names of the persons who had made the threats and had not reported any assaults. In upholding the denial on appeal, the issuing authority explained that a good and substantial reason should include additional evidence, rather than be based solely on personal anxiety or concern about unsubstantiated threats. Similarly, issuing authorities in California use discretion to determine if the applicant is of good moral character, and good cause exists for the issuance of the permit.[21] For example, issuing authorities in California (local law enforcement) told us that an example of a good cause is a business owner who may regularly retain cash on-hand used to pay employees. The issuing authorities of the 2 may-issue states in our case study also conduct additional detailed investigations (e.g., physical verification of residency, reviews of applicants' financial history, and in-person interviews, etc.) of permit applicants. For example, Maryland's issuing authority sends local law enforcement to an applicant's neighborhood or place of business to verify the applicant's address and help decide whether to issue a permit, according to the Maryland State Police. Likewise, several of the issuing authorities in California that we interviewed noted that they hold face-to-face interviews with applicants when determining permit eligibility.

---

[20]Md. Code Ann. Pub. Safety§ 5-306(a)(5)(ii). However, the United States District Court for the District of Maryland held in *Woollard v. Sheridan*, Civil Case No. L-10-2068, 2012 WL 695674 (Mar. 2, 2012) that Maryland's requirement of a "good and substantial reason" for issuance of a handgun permit is insufficiently tailored to the State's interest in public safety and crime prevention and therefore this portion of the Maryland law is unconstitutional because it impermissibly infringes upon the right to keep and bear arms as guaranteed by the Second Amendment. The State of Maryland has filed a timely appeal of this ruling.

[21]Cal. Penal Code § 26150(a)(1)-(2).

## More than Half of the States Grant Permits to Nonresidents who are Eligible

Of the 48 states that issue permits, 22 states' laws allow for authorities to issue only to residents of their state, while 26 allow for issuance to both residents and nonresidents. State laws allow issuing authorities to issue permits to nonresidents in 10 of these 26 states on a limited basis. For example, the issuing authorities in California may issue permits to nonresidents whose principal place of employment or business is within the state.[22] The remaining 16 states do not have such limitations. See appendix VI for a listing of states that issue nonresident permits and the number of permits issued as of December 31, 2011.

## States' Eligibility Requirements Differ; Thus Some States Would Issue a Permit to an Applicant and Others Would Not

While the majority of states share some common eligibility requirements for qualifying an individual for a concealed carry permit, such as firearms safety training and being at least 21 years of age, the 9 states included in our case study that issue permits define certain eligibility requirements very differently, which can affect who is granted a permit (see app. I for individual state summaries in our case study). States disqualify individuals convicted of a felony, but these 9 states differed in defining what crimes constitute a felony (i.e., a particular crime could be a felony in a particular state, but a misdemeanor in another). For example, in Virginia, certain types of larceny are considered Class 6 felonies and would disqualify an individual convicted of these crimes from being eligible for a concealed carry permit.[23] If an individual either takes money or an item worth at least $5 directly from a person, or takes goods valued

---

[22]California issues permits to applicants whose principal place of employment or business is in the country or city, and the applicant spends a substantial period of time in that place of employment or business. Cal. Penal Code, § 26150(a)(3). However, this type of permit is valid for any period of time not to exceed 90 days from the issue date of the license (Cal. Penal Code, § 26220(b)) and is valid only in the county in which it was originally issued Cal. Penal Code, § 26220(b).

[23]The least severe punishment for a felony in Virginia is for a Class 6 felony, which has an authorized punishment for conviction of a term of imprisonment of not less than 1 year nor more than 5 years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both. Va. Code Ann. § 18.2-10. By statute in Virginia, any person who (i) commits larceny from the person of another of money or other thing of value of $5 or more, (ii) commits simple larceny not from the person of another of goods or chattels of the value of $200 or more, or (iii) commits simple larceny not from the person of another of any firearm, regardless of the firearm's value, shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than 1 nor more than 20 years or, in the discretion of the jury or court trying the case without a jury, be confined in jail for a period not exceeding 12 months or fined not more than $2,500, either or both. Va. Code Ann. § 18.2-95.

at $200 or more not directly from a person, he or she could be convicted of a Class 6 felony in Virginia. Alternatively, in Tennessee, if an individual commits a crime of theft of property or services that is valued at $500 or less, it would be classified as a Class A misdemeanor and the individual would remain eligible for a concealed carry permit.[24] Thus, permit applicants who have committed a particular crime could be eligible to receive a permit in some states, but not in others.

In another example, Louisiana, Tennessee, and Virginia all disqualify applicants if they have been convicted of driving while intoxicated (DWI) or driving under the influence (DUI), but each state has its own definitions for what warrants disqualification. For instance, Louisiana disqualifies applicants who have been convicted of operating a vehicle while intoxicated at any time in the 5 years before the individual applied for a permit,[25] while Virginia uses the prior 3 years,[26] and Tennessee disqualifies applicants who were convicted two or more times within 10 years of the date of the application of driving under the influence and one of the convictions has occurred within 5 years from the date of application or renewal.[27] Thus, it is possible for an applicant who was convicted of a DWI in Virginia or DUI in Tennessee 4 years ago to qualify for a permit in those states, but not in Louisiana; and an applicant who was convicted of two DWIs in Virginia 5 years ago to qualify for a permit, while in Louisiana and Tennessee an individual convicted of two DWIs or DUIs within 5 years of applying for a permit would be ineligible.

Some states also have unique eligibility requirements that may disqualify applicants. For example, Louisiana's, Florida's, and Tennessee's laws

---

[24]Tenn. Code Ann. § 39-14-105. In Tennessee, "theft" constitutes a single offense embracing the separate offenses that were referenced as embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and other similar offenses. Tenn. Code Ann. § 39-14-101. Further, a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103(a).

[25]La. Rev. Stat. Ann. § 40:1379.3(C)(8).

[26]Va. Code Ann. § 18.2-308(E)(9).

[27]Tenn. Code Ann. § 39-17-1351(c)(11). According to Tennessee's Department of Public Safety and Homeland Security, if a person is currently under the jurisdiction of the court for driving under the influence and that person's driver's license is revoked, the person is ineligible for a concealed carry permit.

specifically disqualify applicants who suffer from a mental or physical infirmity,[28] while the other 6 states in our case study that issue permits do not.[29] Similarly, Texas and Tennessee disqualify applicants for delinquency on child support.[30] The other 7 states in our case study that issue permits did not cite this as a factor for denial or revocation. See table 2 below for a listing of state disqualifiers for the 9 states included in our case study.

---

[28]La. Rev. Stat. Ann. § 40:1379.3(C)(5) (disqualifying an applicant for a concealed handgun permit who suffers from a mental or physical infirmity due to disease, illness, or retardation which prevents the safe handling of a handgun); Fla. Stat. Ann. § 790.06(2)(c), (i) (disqualifying an applicant for a license who suffers from a physical infirmity which prevents the safe handling of a weapon or firearm; or has been adjudicated an incapacitated person by Florida statute, or similar laws of any other state, unless 5 years have elapsed since the applicant's restoration to capacity by court order). Tenn. Code Ann. § 39-17-1351(c)(12)(generally disqualifying an applicant that has been adjudicated as a mental defective, been judicially committed to or hospitalized in a mental institution by statute, has had a court appoint a conservator for the applicant by reason of a mental defect, or has been judicially determined to be disabled by reason of mental illness, developmental disability or other mental incapacity).

[29]The other select states may refer to mental deficiencies or psychiatric disorders that disqualify applicants for eligibility for a permit. In Georgia, under Ga. Code Ann. § 16-11-129(b)(2)(J), any person who has been hospitalized as an inpatient in any mental hospital within the five years immediately preceding the application for a permit may be prohibited from eligibility for a permit.

[30]Tex. Gov't Code Ann. § 411.172(a)(10)-(11). Under 42 U.S.C. § 666(a)(16), each state must have procedures under which the state has (and uses in appropriate cases) authority to withhold or suspend, or to restrict the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support or failing, after receiving appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings. Some states may consider a concealed carry permit to be a "recreational" or "sporting" license. For instance, Tennessee considers any concealed carry permit to be deemed a "license" when dealing with the enforcement of child support obligations through license denial and revocation. Tenn. Code. Ann. § 39-17-1351(v).

| | Arizona | California | Florida | Georgia | Louisiana | Maryland | Tennessee | Texas | Virginia |
|---|---|---|---|---|---|---|---|---|---|
| Abuse of controlled substances | X | X | X | X | X | X | X | X | X |
| Conviction of a felony | X | X | X | X | X | X | X | X | X |
| Mental deficiencies or psychiatric disorders | X | X | X | X | X | X | X | X | X |
| Subject of a protective/restraining order | X | X | X | X | X | X | X | X | X |
| Discharged from the armed forces under dishonorable conditions | X | X | X | X | X | | X | X | X |
| Conviction for a crime of domestic violence | X | X | X | X | X | | X | X | |
| Chronic/habitual use of alcohol | | | X | X | X | X | X | X | X |
| History of violent behavior | | | | | X | X | | | X |
| Needs a "good and substantial" reason to carry | | X | | | | X | | | |
| Mental or physical Infirmity | | | X | | X | | X | | |
| Must be of "good moral character" | | X | | X | | | | | X |
| Violent misdemeanor | | X | X | | X | | | | X |
| Delinquency in the payment of child support | | X | | | | | X | X | |
| Delinquency in the payment of taxes | | X | | | | | | X | |

Source: GAO analysis of state laws in the 9 states in its review.

The laws of 8 of the 9 states we examined that issue permits also require applicants to complete training related to firearms safety to qualify for a permit; however, the training requirements differ considerably. These requirements range from a list of approved training courses with no specified curriculum to a prescriptive state curriculum that can include a combination of classroom and live fire proficiency testing, which table 3 illustrates (also see app. I for state summaries):

**Table 3: Case Study States' Training Requirements to Qualify for a Concealed Carry Permit**

| State | Training requirement | Live fire required | Hours of Instruction required | Proficiency requirement (written or shooting) | Specific topics as prescribed by state regulations/laws covered |
|---|---|---|---|---|---|
| Tennessee | Yes | Yes: 48 rounds (12 rounds each at 3, 7, and 15 yards, as well as a distance between 2 and 25 yards specified by the instructor) | 8 (4 hours of classroom and 4 hours of firing range.) | 70% on both written and shooting exams | Handgun Nomenclature, function, and operation; handgun Safety, cleaning, and storage; legal liabilities of carrying a handgun |
| Texas | Yes | Yes | Between 10 and 15 | 70% on both written and shooting exams | Use of deadly force; Handgun use, proficiency, and safety; nonviolent dispute resolution; proper storage practices with an emphasis on child access prevention |
| Arizona[a] | Yes | Not specified[b] | No | No | Not specified[b] |
| California | Yes | Not specified[b] | Up to 16 hours | 75% on both written and shooting exams | Firearm safety; and permissible use of a firearm laws |
| Florida[a] | Yes | Yes | Not specified[b] | Yes | Not specified[b] |
| Louisiana[a] | Yes | Not specified[b] | Not specified[b] | No | Child access prevention |
| Virginia[a] | Yes | Not specified[b] | Not specified[b] | No | Not specified[b] |
| Georgia | No | Not applicable | Not applicable | Not applicable | Not applicable |
| Maryland[c] | No | Not applicable | Not applicable | Not applicable | Not applicable |

Source: GAO analysis of state information.

[a]Applicants in these states can fulfill their training requirement by taking a state-approved National Rifle Association, law enforcement, or other firearms safety-training course, or by presenting evidence of experience with a firearm through participation in current military service or proof of an honorable discharge from any branch of the armed services. In Florida, an applicant may also demonstrate firearm proficiency by presenting evidence of equivalent experience with a firearm through participation in organized shooting competition. Fla. Stat. Ann. § 790.06(2)(h)5.

[b]For certain states, the amount of training and the specific topics are not specified in their state laws.

[c]Maryland does not require training for applicants wishing to obtain a permit for personal protection. However, other applicants (e.g., security guards) have to show evidence of training completion to qualify for a permit.

Further, differences in the information required by issuing authorities for eligibility determination exist not only between states but within states. Issuing authorities in some decentralized states augment their application process with additional requirements, which means the steps an individual must take to get a permit will vary by jurisdiction. For example, the issuing authority in one of the California counties we interviewed reported that it requires applicants to have three letters of reference before considering applicants for a permit. Other California counties in our review do not have this requirement. In another example, in Virginia, a

shall-issue state, the decision of requiring applicants to submit fingerprints was left to the discretion of each issuing authority, however this discretion has been removed by the Virginia legislature effective July 1, 2012.[31]

## Majority of States Recognize Permits of at Least 20 Other States; May-Issue States Generally Do Not Grant Reciprocity

As of March 2012, 39 of the 48 states that issue permits and Vermont allow concealed carry, and recognize permits from other states. Of these, the number of other states whose permits they recognize varies, as follows:

- 7 states recognize permits issued in 1 to 19 states,
- 17 states recognize permits issued in 20 to 39 states, and
- 15 states recognize permits issued in 40 or more states—of these, 13 states recognize permits issued in all 47 other states that issue permits.
- Vermont does not require a permit to carry concealed handguns and does not issue permits (residents and nonresidents can carry concealed handguns).[32]

The other 9 states that issue permits do not recognize permits issued from other states; 8 of these states are may-issue states. In addition, Illinois and the District of Columbia do not allow concealed carrying of handguns or issue permits, nor do they recognize other states' permits.[33]

Over the last 10 years, shall-issue states have increasingly honored more states' permits. For example, Georgia honored 12 states' permits in 2002, but increased that number to 26 by 2012. Similarly, Louisiana honored 5 states' permits in 2002, but honored 38 states' permits as of March 2012. Figure 3 shows which states' permits each state will recognize (see app. VII for a listing by state).

---

[31]Pursuant to H.B. 754, 2012 Va. Acts ch. 175, the Virginia legislature amended the Virginia statute governing the issuance of concealed handgun permits, Va. Code Ann. § 18.2-308, to remove the option for a locality to require that an applicant for a concealed handgun permit submit fingerprints as part of the application effective July 1, 2012.

[32]Alaska, Arizona, Wyoming, and Vermont do not require permits to carry concealed handguns; however, Alaska, Arizona, and Wyoming issue permits to their residents so that they may carry concealed handguns outside their state and other states may recognize these permits, whereas Vermont does not issue any permits.

[33]Illinois law requires anyone acquiring or possessing a firearm to have a Firearm Owner's Identification Card (FOID card). 430 Ill. Comp. Stat. 65/2(a)(1).

Move mouse over the black and teal circle in each state to see carry permit information for states.



## 2012 State Reciprocity Profile

● Permits from Other States that are Recognized by this State

● States that Recognize Permits Issued in this State

Source: GAO analysis of state published information.

In general, shall-issue states recognize permits from more states than may-issue states. For example, Texas honors the permits of 40 states, while 32 states honor Texas permits; and Arizona and Tennessee honor the permits of 47 states, while 35 states honor Arizona permits, and 37 honor Tennessee permits. Alternatively, may-issue states do not generally grant reciprocity. Of the 10 may-issue states, Alabama and Delaware are the only states whose laws allow for recognition of permits issued by other states.[34] States may not grant reciprocity for a number of reasons. For example, states may require that eligibility requirements are similar to those of their own state, or that similar background checks are conducted on permit applicants; if this is not the case, they are unlikely to enter into a reciprocity agreement. For the 9 states included in our case study, state laws prescribe the criteria for recognizing other states' permits, as discussed below.

- Tennessee and Arizona (shall-issue states), as required by law, will recognize permits issued in any other state.[35]
- Florida,[36] Georgia,[37] and Louisiana's (shall-issue states) laws require that they can only recognize a state if the other state recognizes their permit.[38]
- Under Texas (a shall-issue state) law, the Governor of Texas can only enter into reciprocity agreements with states if the Texas Attorney General determines that the other states check two of the three

---

[34]Ala. Code § 13A-11-85, Del. Code Ann. tit. 11, § 1441(j).

[35]Tenn. Code Ann. § 39-17-1351(r), (recognizing that a facially valid handgun permit, firearms permit, weapons permit or license issued by another state is valid in Tennessee according to its terms and is treated as if it is a handgun permit issued by Tennessee; provided, however, this is not construed to authorize the holder of any out-of-state permit or license to carry any firearm or weapon other than a handgun within the state). Ariz. Rev. Stat. § 13-3112(Q) (recognizing concealed weapon permits issued by other states if the permit is recognized as valid in the issuing state, and the permit holder is legally present in Arizona and not legally prohibited from possessing a firearm in Arizona). However, even when these requirements are met, a person with a permit from another state may not carry a concealed weapon in Arizona if the person is under 21 years of age, or is under indictment for, or has been convicted of, a felony in any jurisdiction, unless the conviction has been expunged, set aside or vacated, or the person's rights have been restored pursuant to Ariz. Rev. Stat. § 13-3112(S).

[36]Fla. Stat. Ann. § 790.015.

[37]Ga. Code Ann. § 16-11-126(e).

[38]La. Rev. Stat. Ann. § 40:1379.3(T)(2).

criminal history databases that make up NICS when screening applicants for a concealed carry permit.[39]

- Virginia (a shall-issue state) law allows for recognition of permits issued only in states that provide the means for validation of a permit 24 hours a day, among other things.[40]
- California and Maryland (may-issue states) alternatively, by law, do not recognize permits issued in any other state.

States also have the ability to rescind reciprocity agreements, particularly if reciprocal states make changes to their concealed carry laws or requirements. For example, according to a Florida issuing authority official, Nevada no longer recognizes Florida permits because the time between renewals, and subsequent background checks, was changed from 5 to 7 years in 2009, and thus deemed too long for Nevada's standards.

Currently, permit holders who want to carry concealed during their travel to or through other states must know which states will recognize their permits or else they must obtain a nonresident permit in the state they are traveling to or through. This can be challenging since state laws change regularly and permit holders may not always be aware of the most recent changes, though state websites post information on whose permits they honor. For example, because of a recent change in Louisiana's reciprocity laws, while Louisiana recognizes nonresident permits issued in other states, Louisiana residents can no longer use a nonresident permit from another state to carry a concealed weapon in Louisiana.[41]

---

[39]Tex. Gov't Code Ann. § 411.173(b). Texas will only recognize permits issued in states that conduct background checks in NCIC and III.

[40]Va. Code Ann. § 18.2-308(P).

[41]La. Rev. Stat. § 40:1379.3(T)(4).

## Select States Reported Monitoring if Certain Permits Should Be Revoked and Having Processes to Revoke Them when Needed

All 9 states in our case study reported reconfirming permit holders' eligibility at renewal, and 8 reported having mechanisms to monitor eligibility between issuance and renewal. These 9 states utilize similar methods to revoke permits, provide for an appeal process, and use varying processes to retrieve revoked permits.

## Select States Reported Having Mechanisms to Monitor Continued Eligibility

Issuing authorities from all 9 states included in our case study reported that they take action to confirm an individual's continued eligibility to hold a permit as part of the permit renewal process, and 8 of these 9 states also use mechanisms to monitor resident permit holders' continued eligibility between issuance and renewal. As part of this process, issuing authorities consider the length of time permits are valid. During this period, they look for any violations committed by the permit holders since issuance of the permit. The length of time that issuing authorities have to monitor permits holders generally ranges from 1 to 7 years, as shown in figure 4, with the majority (38 of 48) of the states that issue permits having a 4 to 5-year period of validity (see app. V for specific state information on length of time a permit is valid).

**Figure 4: Length of Time Permit Is Valid for Initial Applicants**



Source: GAO analysis of select state reported data and state laws.

In 8 of the 9 states that issue permits in our case study, issuing authorities are to be notified if a resident or nonresident permit holder commits a disqualifying act within their state through law enforcement or state databases. For example, according to officials from the Virginia State Police, they monitor their state criminal databases on a daily basis and receive information from the courts that they use to identify resident permit holders who commit offenses that would make them ineligible to hold permits. In such cases, the Virginia State Police is to inform the state's local permit issuing authorities via fax when permit holders are convicted of a criminal offense or commit an act that would make them ineligible. However, authorities may not be made aware if permit holders commit disqualifying acts outside of their state until conducting background checks during the renewal period or if an out-of-state law enforcement official contacts the state issuing authority. In Florida and Tennessee, issuing authority officials said that they receive arrest reports and review the reports for matches against their permit databases, and when necessary, take appropriate action, such as revoking the permit. In Arizona, California, Louisiana, Maryland, Texas, and Virginia, issuing

authority officials reported that they receive an automatic alert if permit holders are arrested within their state, which they refer to as "rap back."[42] The issuing authorities in these states then review the charges and take appropriate action, to include revoking of a permit if warranted.

According to FBI officials, in response to user needs including those of law enforcement for notification of nationwide, subsequent criminal activity, the FBI is developing a national Rap Back service. Specifically, through the Next Generation Identification's (NGI) Rap Back Service of the FBI CJIS Division, states may have the opportunity to subscribe to this service and automatically be notified of subsequent arrests across the United States for crimes committed by permit holders and other individuals who have had a federal background check. In order for states to use FBI's NGI Rap Back, technical and legislative updates may be required.[43] The FBI's NGI Rap Back Service is expected to be available to states by the summer of 2014.

In Georgia, the remaining case study state, the state's 159 county probate courts that issue permits in the state could become aware of disqualifying acts committed by permit holders through other means. For example, according to Georgia permit issuing authority officials, law enforcement entities within the issuing county may call the issuing probate courts of permit holders who have committed disqualifying acts, which may result in the court revoking the permit. Additionally, probate court officials could become aware of disqualifying acts committed by permit holders through other means, such as reading or scanning the local newspaper and watching local news television broadcasts, which may result in a revocation.

---

[42]A "rap back" or "hit notice" program will inform a designated entity (i.e., state police) when an individual who has undergone a fingerprint-based background check, and whose fingerprints are retained by a criminal history repository after the check, is subsequently arrested. His or her fingerprints, obtained after the arrest, are matched against a database that contains the fingerprints that were initially submitted. Designated entities are then notified of the individual's arrest.

[43] With respect to legislation, states that wish to use the FBI's NGI Rap Back services need legislation requiring concealed carry permit applicants to be fingerprinted and a background check conducted at the federal level. Further, state legislation would also have to allow for retention of those fingerprints at the federal level for use in the FBI's NGI Rap Back Services.

## Most States Track Revocations, and Select States Use Similar Mechanisms to Revoke Permits and Provide for an Appeals Process

Of the 45 states that reported permitting information, 35 reported that they track revocation information, such as the number of permits revoked and the general reasons for the revocations. For the 9 states in our case study, in 2011, the number of revocations per state ranged from approximately 30 to 900. All except 1 select state (Georgia) provided data on the number of revocations for 2011.[44] As shown in table 4, the number of revocations and issuances vary across the case study states.

**Table 4: Approximate Numbers of Revoked and Issued Permits, 2011**

| State | Revoked | Issued |
|---|---|---|
| Virginia | 920 | 49,000 |
| Texas | 900 | 143,700 |
| Florida (fiscal year) | 790 | 123,800 |
| Maryland | 270 | 1,700 |
| California | 150 | 32,700 |
| Tennessee | 100 | 95,000 |
| Louisiana | 60 | 12,000 |
| Arizona | 30 | 12,200 |

Source: GAO analysis of state reported data.

Generally, issuing authorities in the 9 states in our case study that issue permits revoke permits when a permit holder commits a criminal offense, such as a felony, that would make the individual no longer eligible to hold a permit. In Virginia, an issuing authority reported that a common reason for a revocation is if a permit holder is found to be driving under the influence. In Louisiana, the issuing authority reported that a common reason for a revocation is if a permit holder failed to notify the department of public safety of an arrest within 15 days. In Virginia, for example, a revocation could also be warranted if the permit holder has a noncriminal prohibition against carrying a concealed firearm, such as being diagnosed with a mental illness or subject to a domestic violence restraining order. For example, in Arizona, if a judge orders a permit holder to receive mental health treatment or a permit holder is involuntarily committed to a mental health facility, the holder's permit is revoked.

---

[44] Georgia does not have a centralized database to track permit information from its 159 permit issuing authorities. Rather, each permit issuing authority may track revocations for its respective jurisdiction.

GAO-12-717 Concealed Carry Permits

After detecting a disqualifying criminal offense or other disqualifying factors, officials from each of the 9 states in our case study that issues permits reported that they begin the revocation process by notifying the permit holder through a letter or court order, or in some cases, issuing authorities send law enforcement to deliver the letter and retrieve the permit. The letter is to outline the procedures for either appealing the revocation (if applicable) or physically surrendering the permit. Further, all 9 states in our case study have an appeals process.[45] Some states, such as Louisiana and Texas, have a suspension process until the appeal process is completed, final disposition is determined by a court, or the individual surrenders the permit. For example, when a permit holder is arrested, the issuing authority is to suspend the permit until the final disposition has been determined by the court. If the court convicts the permit holder, the issuing authority is to revoke the permit. For example, Louisiana offers permit holders the option of providing additional evidence for the issuing authority to consider as part of its appeals process before final revocation. Texas offers its permit holders the option of requesting a hearing to review the denial, suspension, or revocation of their permit.

## Select States Use Different Mechanisms to Retrieve Revoked Permits

As mentioned above, the 9 states in our case study that issue permits have mechanisms for indicating in their respective systems that a permit has been revoked. In addition, these states have varying retrieval processes. For example:

- In Arizona, the permit holder is required to surrender a revoked permit. If the holder does not surrender the permit and is caught by law enforcement with the revoked permit, the law enforcement officer is directed to seize the permit and return it to the issuing authority.
- In California, although doing so is not a requirement in state law, local law enforcement officials said that permit holders are asked to physically return their revoked permit to the issuing authority (a city police department or sheriff's department).
- Some Georgia issuing authorities send a letter communicating the court order via certified mail notifying permit holders that their permits have been revoked and to surrender the permits. If the issuing authorities do not receive a response, they can send local law enforcement to retrieve the revoked permit.

---

[45]In California, the ability to appeal a permit issuance or non-issuance is at the discretion of the local issuing authority (i.e., county sheriff or city police department).

- Virginia's issuing authorities use different processes to retrieve revoked permits. For example, one issuing authority in Virginia sends local law enforcement to the permit holder's residence to retrieve the revoked permit. Another jurisdiction requires the permit holder to come to the circuit court for a hearing. The judge may charge the permit holder with contempt if the person does not show up for the hearing.

Of the 9 states in our case study that issue permits, 3 (Georgia, Maryland, and Tennessee) reported that they can impose a penalty for failure to surrender a revoked permit or continuing to possess one.[46] Permit issuing authority officials in 5 out of the remaining 6 states (Arizona, California, Florida,[47] Louisiana, Texas, and Virginia) said that they were not aware of any instances where individuals have presented revoked permits to law enforcement and noted that because revocations are annotated in their state-wide systems available to law enforcement, law enforcement could know if someone presented a revoked permit.

---

[46]While Georgia state law does not mandate retrieval of revoked permits, one of the select counties reported sending sheriffs to serve revoked permit holders and seize the permits.

[47]Florida issuing authority has been made aware of isolated instances when a suspended license has been presented to law enforcement.

## Law Enforcement in Select States Visually Check Permits to Verify Validity, among Other Actions

When encountering an individual with a concealed carry permit, such as during a routine traffic stop, law enforcement officials in our 9 case study states that issue permits told us that they visually inspect a permit to verify its status to ensure it is valid and active.[48] They also have mechanisms available to further validate the permit, as needed, such as checking a permit against state databases or contacting state dispatchers. Law enforcement in these states may take steps to confirm a permit is valid and active if law enforcement knows a person has a permit and determines a need to take this action. In Texas, permit holders are required by law to present their permit when encountering law enforcement and identification is requested.[49] In addition, in 5 of our case study states (Arizona, Florida, Louisiana, Tennessee, and Virginia), permit holders are required to produce a permit if law enforcement demands it.[50] For example, in 4 of these states (Louisiana, Tennessee, Texas, and Virginia), law enforcement could become aware if an individual had an active permit when running his or her driver's license, as permits in these states are linked to the driver's license system. During these checks, law enforcement in these states would also receive information on whether the individual had a permit revoked. Permit holders may also voluntarily present permits to law enforcement officials immediately when being pulled over for a traffic stop regardless of state requirements. While Tennessee law does not require permit holders to present permits unless requested by law enforcement officers, according to Tennessee issuing authority officials, firearms safety training required

---

[48]The extent to which law enforcement in states encounters permits would likely depend upon the extent to which states issue permits and recognize other states' permits. As such, law enforcement in may-issue states that issue a lower number of permits relative to their state population and do not recognize other states' permits would be less likely to encounter permits than law enforcement in shall-issue states. Further, law enforcement officials in 9 of the states in our case study said that during the course of performing their duties, they can become aware that an individual possesses a permit through various means. For example, during a routine traffic stop, permit holders may inform law enforcement officials that they have a firearm in their car and provide the officer a permit along with their driver's license.

[49]Pursuant to Tex. Gov't Code Ann. § 411.205, if a permit holder is carrying a handgun on or about the person when a magistrate or a peace officer demands that the permit holder display identification, the permit holder is required to display both the permit holder's driver's license or identification certificate and the permit holder's handgun permit.

[50]There is no statutory requirement for California residents to declare firearms to law enforcement upon a routine traffic stop. However, individual chiefs/sheriffs may require such behavior as a condition of permit issuance.

for all Tennessee permit holders teaches them to do so when encountering law enforcement.

Generally, law enforcement officials in all 9 case study states said that when presented with a permit, they would visually inspect the permit to verify that the permit was current and belonged to the individual. All of these states have a standardized permit prescribed by state law, which can make it easier for law enforcement to verify. Further, all of these states' permits contain the permit holders' name, permit expiration date, and unique permit number—this information assists law enforcement in verifying whether a permit is current. As shown in table 5, the permits have other physical features such as a photograph, the date of birth, or a state seal or hologram, among others.

**Table 5: Physical Characteristics of Case Study States' Concealed Carry Permits**

| State | Arizona | California | Florida | Georgia | Louisiana | Maryland | Tennessee | Texas | Virginia[a] |
|---|---|---|---|---|---|---|---|---|---|
| Permit holder's name | X | X | X | X | X | X | X | X | X |
| Expiration date | X | X | X | X | X | X | X | X | X |
| Permit number | X | X | X | X | X | X | X | X | X |
| Height/Weight | X | X | | X | X | X | X | X | X |
| Date of birth | X | X | X | X | | | X | X | X |
| Issuing authority and contact information | X | X | X | X | | X | | | X |
| Issuance date | X | X | X | X | X | X | | | X |
| Address | | X | | X | X | | X | X | X |
| Photograph | | | X | X | X | X | X | X | |
| State seal | | | X | X | X | X | X | | X |
| Laminated | | | X | X | X | X | X | X | |
| Hologram | X | | X | X | | | X | X | |
| Driver's license lumber | | | | | X | X | X | X | |
| Race | X | | X | | | X | | X | |
| Bar code | | | | X | | X | X | X | |
| Sex | X | | | X | | X | X | X | |
| Permit holder's signature | | | | X | | | X | X | |
| Other[b] | | X | | X | | X | | X | |

Source: GAO analysis of state reported data.

[a]Virginia nonresident permit includes a photo and is laminated while the resident permit does not have these features.

[b]Other features may include hair color, eye color, magnetic strip, listing of firearms authorized to be carried concealed, or fingerprint, among other things.

Law enforcement officials in all 9 case study states said they would not routinely take additional steps to verify a permit beyond visual inspection

and verifying permit information in the driver's license system in states where permits are linked to such systems. These officials explained that their top priorities during a traffic stop would be officer safety and the reason for the stop (e.g., traffic violation). However, law enforcement in all of these states has other means to further validate a permit as needed, although some methods are easier to use than others. According to issuing authority officials in Arizona, California, Florida, Louisiana, Maryland, Tennessee, Texas, and Virginia, law enforcement within their state can instantly access state databases, which have permit holders' information, to validate the status of a permit as needed. In Florida, for example, issuing authority officials said that they update all information related to permit holders in the state's criminal database nightly. The Florida Department of Law Enforcement —which manages the database—makes the information available to all law enforcement agencies. Thus, a law enforcement officer in the field can obtain current information on the status of a permit usually by contacting the officer's dispatcher, or in some Florida jurisdictions, law enforcement can obtain current permit information from their vehicles' on-board computer systems. In Georgia and Maryland, law enforcement officers can call the issuing authority to verify the status of resident permits. However, law enforcement may not be able to instantly validate a permit because permit issuing authorities generally operate during normal business hours (Monday through Friday, between the hours of 8 a.m. to 5 p.m.).

In addition, law enforcement may have mechanisms to validate permits issued by other states. As noted above, Louisiana, Tennessee, Texas, and Virginia provide access to permit information when officers check these driver's licenses; consequently, this check can be used to validate permits within their state or outside of their state. Further, an out-of-state law enforcement agency can obtain current information on Florida-issued permits by submitting an information request to the Florida Department of Law Enforcement Customer Support Center. Additionally, Arizona, Florida, Louisiana, Tennessee, Texas, and Virginia input permit information into the International Justice and Public Safety Network (Nlets), an information-sharing system available to all states' law enforcement agencies. Nlets provides users instant access to permit holder information, such as permit status (i.e., whether the permit is valid, active, or revoked, etc.), and a description of the permit holder. Submission of permit holder information into Nlets is strictly voluntary for states that have a centralized state database. Currently, approximately 20 states input permit information into Nlets. States that do not have a centralized state database of permit holders (e.g., Georgia) cannot make information available in Nlets. Law enforcement in other states can also call select states' dispatchers in

Florida and Maryland to validate permits issued by these states. To validate a permit issued in California, officers from other states could call the California Department of Justice, which collects permit information from the issuing authorities throughout the state.

We provided portions of a draft of this report to state and local officials in Arizona, California, Florida, Georgia, Louisiana, Maryland, Tennessee, Texas, and Virginia. We did not obtain official comments from the Department of Justice because we were not directly auditing its programs. However to ensure the accuracy of the information in the report that relates to the department provided, the department provided technical comments, which we incorporated as appropriate.

We are sending copies of this report to the appropriate congressional committees, the Attorney General of the United States; and other interested parties. In addition, this report is available at no charge on the GAO web site at: http://www.gao.gov.

If you or your staff members have any questions about this report please contact Carol Cha at (202) 512-4456 or chac@gao.gov or Eileen Larence at (202) 512-6510 or larencee@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report. GAO staff who made major contributions to this report are listed in appendix VIII.

Carol R. Cha
Acting Director, Homeland Security and Justice Issues

Eileen R. Larence
Director, Homeland Security and Justice Issues

# Appendix I: Case Study State Summaries

**Arizona Summary: Shall-Issue State (Residents and Nonresidents)**

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 163,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 4,572,376

**Unlicensed Open Carry Permitted:** Yes

**Permit to Carry Concealed:** Arizona significantly revised its weapons permit laws in 2010. Arizona had allowed the open carrying of a weapon without a permit prior to that time, but since 2010, Arizona has allowed residents to carry a firearm open or concealed without a permit.[1] However, Arizona does issue concealed carry permits, which may be used for purposes of reciprocity, and to carry in certain locations.[2]

**Length of Permit Validity:** 5 years

**Eligibility Requirements:** The Arizona Department of Public Safety is required to issue a permit to carry a concealed weapon to a person who meets all of the following eligibility requirements:[3]

1. is a resident of Arizona or a United States citizen (i.e., in-state and out-of-state residents);
2. is 21 years of age or older;
3. is not under indictment for and has not been convicted in any jurisdiction of a felony;[4]
4. does not suffer from mental illness and has not been adjudicated mentally incompetent or committed to a mental institution;
5. is not unlawfully present in the United States;

---

[1] 2010 Ariz. Sess. Laws ch. 59, § 2 (amending Ariz. Rev. Stat. §13-3102, which formerly read, "A person commits misconduct involving weapons by knowingly: 1. Carrying a deadly weapon without a permit pursuant to section 13–3112 except a pocket knife concealed on his person; 2. Carrying a deadly weapon without a permit pursuant to section 13–3112 concealed within immediate control of any person in or on a means of transportation…").

[2] See Ariz. Rev. Stat. § 13-3112; § 4-244 (29)-(30) (premises that sell alcohol).

[3] Ariz. Rev. Stat. § 13-3112(A).

[4] Unless the conviction has been set aside in some way, or the applicant's rights have restored, and applicant is not a prohibited possessor under state or federal law.

6. has ever demonstrated competence with a firearm (as described in the training requirement section below) and provides adequate documentation that the person has satisfactorily completed a training program

   a. adequate documentation means: a) a current or expired Arizona permit; b) a certificate or affidavit of completion from the conductor of the course; c) evidence of current military service or proof of honorable discharge or general discharge under honorable conditions from the United States armed forces; d) a concealed weapon permit as described in the training requirement section below.[5]

**Firearms Training Requirements:** An applicant shall demonstrate competence with a firearm through any of the following:

1. Completion of any firearms safety or training course or class that is available to the general public; that is offered by a law enforcement agency, a junior college, a college or a private or public institution, academy, organization or firearms training school; and that is approved by the Department of Public Safety or that uses instructors who are certified by the National Rifle Association.

2. Completion of any hunter education or hunter safety course approved by the Arizona game and fish department or a similar agency of another state.

3. Completion of any National Rifle Association firearms safety or training course.

4. Completion of any law enforcement firearms safety or training course or class that is offered for security guards, investigators, special deputies, or other divisions or subdivisions of law enforcement or security enforcement and that is approved by the Department of Public Safety.

5. Evidence of current military service or proof of honorable discharge or general discharge under honorable conditions from the United States armed forces.

---

[5] Ariz. Rev. Stat. § 13-3112(E).

6. A valid current or expired concealed weapon, firearm, or handgun permit or license that is issued by another state or a political subdivision of another state and that has a training or testing requirement for initial issuance.

7. Completion of any governmental police agency firearms training course and qualification to carry a firearm in the course of normal police duties.

8. Completion of any other firearms safety or training course or class that is conducted by a Department of Public Safety-approved or National Rifle Association-certified firearms instructor.[6]

**Factors State Considers in Granting Reciprocity:** Arizona law requires that the concealed weapon, firearm, or handgun permit or license issued by another state or its political subdivision be recognized if the following conditions are met:

1. the permit or license is recognized as valid in the issuing state;
2. the permit holder is legally present in Arizona;
3. the permit holder is not legally prohibited from possessing a firearm in Arizona.[7]
4. the permit holder is 21 years of age or older; and
5. the permit holder is not under indictment for, or been convicted of, a felony offense in any jurisdiction (unless the conviction has been set aside in some way, or the applicant's rights have been restored, and the permit holder is not a prohibited possessor under state or federal law).[8]

**Revocation Process:** The permit must be suspended or revoked if the person no longer meets the eligibility requirements listed above. The department must notify the permit holder in writing within 15 working days of the revocation or suspension and state the reasons for the action.[9] Arizona law also provides that if a person is arrested or indicted for an offense that would disqualify him or her from obtaining a permit, or

---

[6]Ariz. Rev. Stat. § 13-3112(N).

[7]Ariz. Rev. Stat. § 13-3112(Q).

[8]Ariz. Rev. Stat. § 13-3112(S).

[9]Ariz. Rev. Stat. § 13-3112(M).

prohibited from possessing a weapon under state law,[10] the permit is required to be immediately suspended and seized.[11] The permit is to be restored if the permittee is found not guilty or the charges are dismissed.[12] Permits may also be suspended when permittees do not present their permit at the request of law enforcement.[13]

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Law enforcement officials in Arizona, and in states that participate in the International Justice and Public Safety Network (Nlets), can run a Concealed Weapons Query through the system. Law enforcement officials in states that do not participate in Nlets can call dispatch at the Arizona Department of Public Safety.

## California Summary: May-Issue State (Residents)

**Approximate Number of Active Concealed Carry Permit Holders as of September 1, 2011:** 35,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 26,801,914

**Unlicensed Open Carry Permitted:** No

**Permit to Carry Concealed:** California law provides license-issuing authority to various officials:

- a sheriff of a county;[14] or

---

[10]Under Ariz. Rev. Stat. § 13-3101(A)(7), this includes a person who has been found to constitute a danger to himself or others, who has been convicted of a felony, who is serving a term of imprisonment or probation, or is an undocumented alien, among other things.

[11]Ariz. Rev. Stat. § 13-3112(B).

[12]Ariz. Rev. Stat. § 13-3112(B).

[13]Ariz. Rev. Stat. § 13-3112(C).

[14]Cal. Penal Code § 26150(b).

- the chief or other head of a municipal police department of any city, or city and county.[15]

The issuing authority may issue one or two forms of concealed carry license:

- a license to carry a firearm capable of being concealed on the person; or
- in a county of less than 200,000, a license to carry, only in that county, a loaded and exposed firearm capable of being concealed upon the person.[16]

The issuing authority may include any reasonable restrictions or conditions that the issuing authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which the person may carry the concealed firearm.[17] These restrictions are to be indicated on the permit.[18]

**Length of Permit Validity:** The license is generally valid for a period not to exceed 2 years.[19] For peace officers, it is 4 years.[20] For judges, it is 3 years.[21]

**Eligibility Requirements:** The license may be issued if the following conditions are met:

1. the person applying is of good moral character;
2. good cause exists for the issuance;
3. the applicant is a resident of the county or city within the county;
4. the applicant has completed a course of training; and

---

[15]Cal. Penal Code § 26155(a).

[16]Cal. Penal Code §§ 26150(b), 26155(b).

[17]Cal. Penal Code § 26200(a).

[18]Cal. Penal Code § 26200(b).

[19]Cal. Penal Code § 26220(a).

[20]Cal. Penal Code § 26220(e).

[21]Cal .Penal Code § 26220(c).

5. The California Department of Justice (CA DOJ) has determined that the person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.[22]

**Firearms Training Requirements:** Applicant must complete a firearms safety training course:

a. For new applicants, the course must be acceptable to the licensing authority, not be longer than 16 hours, and must include instruction on at least firearm safety and the law regarding the permissible use of a firearm.
b. For renewal applicants, the course must be acceptable to the licensing authority, be at least 4 hours, and must include instruction on at least firearm safety and the law regarding the permissible use of a firearm.[23]

**Factors State Considers in Granting Reciprocity:** California does not recognize concealed carry permits from other states.

**Revocation Process:** The license must be revoked by the local licensing authority if it has either been notified by the CA DOJ or determines that the person is prohibited by California or federal law from possessing, receiving, owning, or purchasing a firearm.[24] Correspondingly, if the CA DOJ determines that the licensee is subject to any of these prohibitions, it must notify the local licensing authority.[25] If the licensing authority revokes the license, the CA DOJ must be notified of the revocation immediately. The licensee must also be immediately notified of the revocation in writing.[26]

---

[22]Cal. Penal Code § 26195(a).

[23]Cal. Penal Code §26165. The licensing authority may require a community college course certified by the Commission on Peace Officer Standards and Training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

[24]Cal. Penal Code § 26195(b)(1).

[25]Cal. Penal Code § 26195(b)(2).

[26]Cal. Penal Code § 26195(b)(3).

If a person moves from his or her original county of residence, the license will expire 90 days after the move.[27] If the license was to carry a loaded and exposed firearm, the license will be revoked immediately when the licensee changes his or her place of residence.[28]

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

California law enforcement uses local law enforcement and the CA DOJ databases to verify the validity of permits; for example:

- A California police department enters all concealed carry permit information into the Police Department Records Management System which is linked to COPLINK (a computer system that accepts information from all law enforcement agencies that are linked into COPLINK). Other law enforcement entities that are linked into COPLINK can get concealed carry permit information.

- Another police department stated that it can check its database or CA DOJ databases to verify the status of a concealed carry holder's permit.

## Florida Summary: Shall-Issue State (Residents and Nonresidents)

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 887,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 14,288,320

**Unlicensed Open Carry Permitted:** No

**Permit to Carry Concealed:** Yes. Under Florida law, it is a crime to carry a concealed firearm without having a license to carry.[29]

---

[27]Cal. Penal Code § 26210(d).

[28]Cal. Penal Code § 26210(e).

[29]Fla. Stat. Ann § 790.01.

**Length of Permit Validity:** Licenses are valid for 7 years from the date of issuance.[30]

**Eligibility Requirements:** The Department of Agriculture and Consumer Services is required to issue a license when the applicant meets the following requirements:[31]

1. General:
   a. Is a resident of the United States or permanent resident alien, in certain circumstances, a foreign government official;
   b. Is 21 years of age or older;
   c. Does not suffer from a physical infirmity that prevents the safe handling of a firearm;
   d. Desires a legal means to carry a concealed firearm for lawful self-defense;

2. Criminal History Information:
   a. Is not ineligible to possess a firearm by virtue of a felony conviction;
   b. Is not prohibited from purchasing or possessing a firearm by any other provision of Florida or federal laws.
   c. Has not had adjudication of guilt withheld or imposition of sentence suspended on any felony or misdemeanor crime of domestic violence unless 3 years have elapsed since probation or any other conditions set by the court have been fulfilled, or the record has been sealed or expunged;
   d. Has not been issued an injunction that is currently in force and effect and that restrains the applicant from committing acts of domestic violence or acts of repeat violence;
   e. Licenses must be denied if the applicant has been found guilty of, had adjudication of guilt withheld for, or had imposition of sentence suspended for one or more crimes of violence constituting a misdemeanor, unless 3 years have elapsed since probation or any other conditions set by the court have been fulfilled or the record has been sealed or expunged.[32] If the

---

[30]Fla. Stat. Ann § 790.06(1).

[31]Fla. Stat. Ann § 790.06(2).

[32]Fla. Stat. Ann § 790.06(3).

applicant is charged with a disqualifying crime or injunction related to domestic violence during the processing, the processing must be suspended pending final disposition.[33]

1. Substance Abuse and Mental Health Information
   a. Has not been committed for the abuse of a controlled substance or been found guilty under Florida's drug laws or similar laws of another state within 3 years prior to the application submission;
   b. Does not chronically and habitually use alcoholic beverages or other substances to the extent that his or her normal faculties are impaired;[34]
   c. Has not been adjudicated an incapacitated person under Florida law or similar laws or another state unless 5 years have elapsed since the applicant's restoration to capacity by court order;
   d. Has not been committed to a mental institution under Florida law or similar laws of another state, unless the applicant produces a certificate from a licensed psychiatrist that the applicant has not suffered from the disability for at least 5 years prior to the date of submission.

**Firearms Training Requirements:** The Department of Agriculture and Consumer Services is required to issue a license when the applicant:[35]

- Demonstrates competence with a firearm by completion of an approved class, such as one offered by the National Rifle Association, a certified instructor, or law enforcement, or through evidence of experience through the military service, among other things.

**Factors State Considers in Granting Reciprocity:** Florida will grant reciprocity to only those states that honor its concealed weapons permit.

**Revocation or Suspension Process:** Licenses must be revoked if the licensee has been found guilty of a crime of violence within the preceding

---

[33]Fla. Stat. Ann § 790.06(3).

[34]This will be presumed where in the 3 years immediately preceding the application, the applicant has been committed for substance abuse treatment under Florida law, has been convicted as a habitual offender of disorderly intoxication, or has two or more convictions of driving under the influence or similar state law.

[35]Fla. Stat. Ann § 790.06(2).

3 years.[36] Once the department has been notified by a law enforcement agency, court, or the Florida Department of Law Enforcement that an applicant or licensee has been arrested or formally charged for a disqualifying crime, or an injunction related to domestic violence, the department must obtain written verification and then must suspend the license.[37] Florida also provides suspension and revocation authority to the department if a licensee becomes ineligible due to the previously outlined physical, mental health or criminal disqualifications.[38]

**Mechanism Available for Law Enforcement Officer's within and outside the State to Verify the Validity of Permits Issued in this State:**

Law enforcement (in-state and out-of-state) can check the validity of a Florida permit through the Florida Department of Law Enforcement's database.

| Georgia Summary: Shall-Issue State (Residents) | **Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 600,000 (rounded to the nearest thousand) |

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 600,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per US 2010 Census:** 6,906,024

**Unlicensed Open Carry Permitted:** No

**Permit to Carry Concealed:** Georgia law allows an individual to carry a weapon in a concealed or open manner—in the person's home, car, or place of business.

**Length of Permit Validity:** License valid for 5 years

**Eligibility Requirements:** The judge of the probate court of each county has the authority to issue a weapons carry license or renewal license for a 5-year period, which allows the person to carry any weapon in any

---

[36]Includes where the holder had an adjudication of guilt withheld or had the imposition of sentence suspended.

[37]Fla. Stat. Ann § 790.06(3).

[38]Fla. Stat. Ann § 790.06(10).

county.[39] An applicant is eligible for a license to carry a concealed handgun if the person:

1. is domiciled in that county.[40] This also includes non-citizens, who provide certain identifying information.
2. is at least 21 years of age.[41]

Criminal history

3. has not been convicted[42] of a felony by any court (unless pardoned);
4. does not have felony proceedings pending against the person;
5. is not a fugitive from justice;
6. is not federally prohibited from possessing or shipping a firearm;
7. has not been convicted of the offense of unlawful manufacture or distribution of a controlled substance or other dangerous drug;[43]
8. has not had his or her weapons carry license revoked;
9. has not been convicted of specified weapons-related offenses, such as carrying a weapon without a license, unless it has been 5 years since any related restraint or supervision or other conviction; and[44]
10. has not been convicted of a drug-related offense and is not subject to related restraint and supervision, a second drug related conviction, or a conviction related to (6)–(8) above, in the 5 years prior to the date of application.

---

[39]Ga. Code Ann. § 16-11-129(a). This language provides that the judge "may" issue a permit; however, Ga. Code. Ann. 16-11-129(d)(4) requires the judge to issue the permit if certain eligibility requirements are met. A 1989 opinion by the Georgia Attorney General clarifies that the judge does not have discretion to deny a permit if the eligibility requirements are met, other than the "good moral character" determination 1989 Op. Atty Gen. Ga. 188; 1989 Ga. AG LEXIS 64.

[40]May also provide licenses to military personnel. Ga. Code Ann. §16-11-129(a).

[41]Ga. Code Ann. § 16-11-129(b)(2)(A).

[42]Convicted includes a plea of guilty or a finding of guilt by a court of competent jurisdiction or the acceptance of a plea of nolo contendere, irrespective of the pendency or availability of an appeal or an application for collateral relief. Ga. Code Ann. § 16-11-129(b)(1)(B).

[43]Unless it was first offender treatment without adjudication of guilt for a conviction and such sentence was successfully completed and the person has not had any other conviction since the completion of such sentence and for at least five years prior to the application. Ga. Code Ann. § 16-11-129(b)(3).

[44]Ga. Code Ann. § 16-11-129(b)(2)(H).

Mental Health and Substance Abuse

11. Has not been hospitalized as an inpatient in any mental hospital or alcohol or drug treatment center within the 5 years immediately preceding the application; however, the judge has discretion to issue the weapons carry license or renewal license, considering the circumstances surrounding the hospitalization and the recommendation of the superintendent of the hospital or treatment center where the individual was a patient.[45]

**Firearms Training Requirements:** Not Required

**Factors State Considers in Granting Reciprocity:** Georgia law provides that an out-of-state resident who is licensed to carry a weapon in a state whose laws recognize Georgia licenses can carry a weapon in Georgia. The license holder must follow Georgia law in carrying the weapon.[46] Other states' permits are not valid for Georgia residents.[47]

**Revocation Process:** If the judge learns or has brought to his or her attention any reasonable ground to believe that the licensee is not eligible to have the license, after notice and hearing, the judge may revoke the license.[48] The judge must find that the person does not meet the weapons carry license eligibility requirements, has falsified the application, is mentally incompetent, or chronically uses alcohol or narcotics.[49]

Possession of a revoked license is a misdemeanor offense.[50]

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

---

[45]Ga. Code Ann. § 16-11-129(b)(2)(J).

[46]Ga. Code Ann. § 16-11-126(e).

[47]Ga. Code Ann. § 16-11-126(e).

[48]Ga. Code Ann. § 16-11-129(e).

[49]Ga. Code Ann. § 16-11-129(e).

[50]Ga. Code Ann. § 16-11-129(e).

Law enforcement officers within and outside of the state can call the issuing probate court during normal business hours to verify the validity of permits. Some probate courts require documentation or other proof that the person requesting is a member of law enforcement (a faxed request on letterhead, or an in-person request by a uniformed officer with a proper identification such as a badge).

## Louisiana Summary: Shall-Issue State (Residents)

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 40,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 3,279,135

**Unlicensed Open Carry Permitted:** Yes

**Permit to Carry Concealed:** The Deputy Secretary of Public Safety Services of the Department of Public Safety and Corrections is required to issue a concealed handgun permit to any Louisiana resident who qualifies for a permit under the Louisiana permit eligibility provisions.[51]

**Length of Permit Validity:** 5 years.[52]

**Eligibility Requirements:** Permits can be issued only to Louisiana residents who qualify.[53] Applicants must make a sworn application to the Deputy Secretary of Public Safety Services of the Department of Public Safety and Corrections. Any false or misleading information provided is grounds for the denial or revocation of a permit. As part of the application, the applicant must:

1. Include any training in pistols or revolvers on the application;
2. be a resident of the state and not be an illegal alien; and
3. be 21 years of age or older.
4. Criminal history:

---

[51]La. Rev. Stat. Ann. § 40:1379.3(A)(1).

[52]La. Rev. Stat. Ann. § 40:1379.3(H)(2).

[53]La. Rev. Stat. Ann. § 40:1379.3(B).

    a. not be ineligible to possess a firearm by virtue of having been convicted of a felony;

    b. not have been convicted of a crime of violence at the misdemeanor level, unless 5 years have elapsed since the completion of any sentence or conditions set by the court. Or unless the conviction was set aside and the prosecution dismissed, prior to the date on which the application is submitted;

    c. not have been convicted of or charged with any crime of violence or any crime punishable for a term of imprisonment of greater than 1 year;[54]

    d. not have a history of engaging in violent behavior;[55]

    e. not be ineligible to possess a firearm under federal law; and

    f. not be a fugitive from justice.

5. Mental health information:

    a. not suffer from a mental or physical infirmity due to disease, illness, or retardation that prevents the safe handling of a handgun;

    b. not have been committed, either voluntarily or involuntarily, for the abuse of a controlled dangerous substance or have been convicted of a misdemeanor relating to a controlled dangerous substance within the last 5 years, or be currently charged with such an offense;

    c. not chronically and habitually use alcoholic beverages to the extent that his normal faculties are impaired;[56]

    d. not be an unlawful user of, or addicted to, marijuana, depressants, stimulants, or narcotic drugs; and

    e. not have been adjudicated to be mentally deficient or been committed to a mental institution;

---

[54]This includes even where the conviction has been set aside or expunged, except for individuals convicted under 18 U.S.C. § 491(a), who shall be permitted to qualify for a concealed handgun permit if 15 or more years has elapsed between the date of application and the successful completion or service of any sentence, deferred adjudication, or period of probation or parole.

[55]There is a rebuttable presumption that an applicant has a history of engaging in violent behavior upon proof that, within a 10-year period immediately preceding the date of the application, the applicant has been arrested or charged on three or more occasions for any crime of violence, or has been arrested or charged on two or more occasions for any crime of violence that may be punished by death.

[56]This will be assumed if the applicant has been convicted of operating a vehicle while intoxicated, or has been admitted, either voluntarily or involuntarily, for treatment as an alcoholic, within the last 5 years, or at any time after the application has been submitted.

6. not have been discharged from the U.S. armed forces under certain circumstances (e.g., dishonorable discharge).
7. Prior permit applications:
   a. not have had a permit denied within 1-year prior to the most recent application; and
   b. not have a permit revoked within 4 years prior to the most recent application.[57]
8. demonstrate competence with a handgun.

**Firearms Training Requirements:** Upon application to the department for a permit, all applicants shall demonstrate competence with a handgun by any one of the following:

   a. completion of any Department of Public Safety and Corrections-approved firearms safety or training course that shall include at least a minimum of 9 hours of instruction as detailed below:

      i. one hour of instruction on handgun nomenclature and safe handling procedures of a revolver and semi-automatic pistol;
      ii. one hour of instruction on ammunition knowledge and fundamentals of pistol shooting;
      iii. one hour of instruction on handgun shooting positions;
      iv. three hours of instruction on the use of deadly force and conflict resolution that will include a review of La. Rev. Stat. Ann. §§14:18 through 14:22 and which may include a review of any other laws relating to the use of deadly force;
      v. one hour of instruction on child access prevention; and
      vi. two hours of actual live range fire and proper handgun cleaning procedures:

         1. live range fire shall include 12 rounds each at 6 feet, 10 feet, and 15 feet for a total of 36 rounds;
         2. each applicant or permittee must perform at least one safe reload of the handgun at each distance;
         3. each applicant or permittee must score 100 percent hits within the silhouette portion of a National Rifle Association (NRA) B-27-type silhouette target with at least 36 rounds;

---

[57]La. Rev. Stat. Ann. § 40:1379.3(C). The applicant must also agree in writing to hold harmless and indemnify the department, the state, or any peace officer for any and all liability arising out of the issuance or use of the concealed handgun permit;

b.  completion of the NRA personal protection course including instruction in child access prevention conducted by a NRA certified instructor;

c.  completion of the NRA basic pistol shooting course including instruction in child access prevention conducted by a NRA certified instructor;

d.  completion of a firearms training course approved by the Louisiana State Board of Private Security Examiners, in accordance with La. Rev. Stat. Ann. § 37:3284 et seq., including instruction in child access prevention;

e.  possession of a current valid license or permit to carry a concealed handgun issued by a parish law enforcement officer;

f.  completion of a law enforcement training academy program certified by the Council on Peace Officer Standards and Training; or

g.  proof of completion of small arms training while serving with the armed forces of The United States of America as described in La. Rev. Stat. Ann. § 40:1379.3(D)(1).[58]

**Factors State Considers in Granting Reciprocity:** While Louisiana law recognizes the validity of out-of-state permits when carried by out-of-state residents, it does not allow Louisiana residents to obtain permits from other states for the purpose of carrying a concealed weapon in Louisiana.

The permits of out-of-state residents are valid in Louisiana in the following circumstances:

1.  The permit is current and valid;
2.  the permit holder is at least 21 years of age; and
3.  the state in which the permit was issued recognizes permits issued by Louisiana.[59]

Louisiana residents may not use permits issued by another state for the purpose of authorizing the carrying of a concealed weapon in Louisiana.

---

[58]La. Rev. Stat. Ann. § 40:1379.3(D).

[59]La. Rev. Stat. Ann. § 40:1379.3(T)(2).

The Deputy Secretary for Public Safety Services is authorized to enter into reciprocity agreements with other states so that full-time active peace officers commissioned in another state have the same authority as a person issued a concealed handgun permit to carry a concealed handgun while in Louisiana, regardless of whether or not they are in the official discharge of their duties.[60]

**Revocation Process:** A permit is to be revoked if the permittee fails to satisfy any of the qualification requirements.

Permit holders are prohibited from carrying a weapon while under the influence of alcohol or a controlled dangerous substance; the permit is considered automatically suspended and is not valid.[61] The department is required to revoke the permit where the holder has carried the weapon in these circumstances, refuses to submit to a chemical test, or where the holder commits negligent carrying of a concealed handgun.[62]

Permit holders are required to make law enforcement officers aware that the holder has a weapon and the permit is to be revoked for violation of this requirement.[63]

Whenever a peace officer determines that grounds under exist for the revocation of a concealed handgun permit, the officer is to prepare an affidavit indicating the reasons for the revocation and all other available information regarding the revocation. A copy of the peace officer's report relating to the incident must be attached to the affidavit when submitted to the department.[64]

---

[60]La. Rev. Stat. Ann. § 40:1379.3(T).

[61]La. Rev. Stat. Ann. § 40:1379.3(F).

[62]La. Rev. Stat. Ann. § 40:1379.3(F), (I).

[63]La. Rev. Stat. Ann. § 40:1379.3(I)(2).

[64]La. Rev. Stat. Ann. § 40:1379.3(I)(5).

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Law enforcement officers can access concealed carry permit status when checking a Louisiana resident's driver's license.

## Maryland Summary: May-Issue State (Residents and Nonresidents)

**Approximate Number of Active Concealed Carry Permit Holders as of October 1, 2011:** 12,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 4,256,926

**Unlicensed Open Carry Permitted:** Maryland state law requires a person to have a permit issued "before the person carries, wears, or transports a handgun."[65] The person must have the permit in his or her possession whenever carrying, wearing, or transporting a handgun.[66]

**Permit to Carry Concealed:** A permit is to be issued to a person when the Secretary of the Maryland State Police finds that the applicant meets specific eligibility requirements.

**Length of Permit Validity:** Permits expire on the last day of the holder's birth month following 2 years after the date the permit is issued and may be renewed for successive 3-year periods.[67]

**Eligibility Requirements:** A permit is to be issued to a person when the Secretary of the Maryland State Police finds that the applicant:

1. is an adult;
2. has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment of more than 1 year has been imposed;[68]

---

[65]Md. Code Ann., Pub. Safety, § 5-303; Md. Code. Ann., Crim., § 4-203(a).

[66]Md. Code Ann., Pub. Safety, § 5-308.

[67]Md. Code Ann., Pub. Safety, § 5-309.

[68]Unless the person is pardoned or granted other relief by the Attorney General.

3. has not been convicted or a crime involving the possession, use, or distribution of a controlled dangerous substance;
4. is not presently an alcoholic, addict, or habitual user of a controlled dangerous substance, unless under legitimate medical direction;
5. based on an investigation, has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another; and
6. based on an investigation, has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.[69]

When an applicant is under 30 years of age, the Secretary must additionally find that the applicant has not been:

1. committed to a juvenile facility for longer than 1 year after an adjudication of delinquency by a juvenile court; or
2. adjudicated delinquent by a juvenile court for an act that if committed by an adult would be a crime of violence, a felony under Maryland law, or a misdemeanor under Maryland law that carries a statutory penalty of more than 2 years.[70]

These requirements are in addition to those enumerated in Maryland law to legally possess a firearm.[71]

**Firearms Training Requirements:** Maryland does not require handgun safety training for residents wishing to obtain a concealed handgun permit for specific purposes of personal protection.

**Factors State Considers in Granting Reciprocity:** Maryland does not recognize other states' concealed carry handgun permits with the

---

[69]Md. Code Ann., Pub. Safety, § 5-306(a). ). However, the United States District Court for the District of Maryland held in *Woollard v. Sheridan*, Civil Case No. L-10-2068, 2012 WL 695674 (Mar. 2, 2012) that Maryland's requirement of a "good and substantial reason" for issuance of a handgun permit is insufficiently tailored to the State's interest in public safety and crime prevention and therefore this portion of the Maryland law is unconstitutional because it impermissibly infringes upon the right to keep and bear arms as guaranteed by the Second Amendment. The State of Maryland has filed a timely appeal of this ruling.

[70]Md. Code Ann., Pub. Safety, § 5-306(b).

[71] See Md. Code Ann., Pub. Safety, § 5-133.

exception of other states' armored car personnel who possess a valid permit who are on duty in Maryland.

**Revocation Process:** The Secretary may revoke the permit after finding that the holder does not meet the permit application requirements listed above, or did not have the permit in the person's possession when carrying, wearing, or transporting a handgun.[72] The failure to return a revoked permit is a misdemeanor offense, subject to the imprisonment of up to 1 year, and/or a fine between $100 and $1,000.[73] A permit holder is prohibited from wearing, carrying, or transporting a handgun while under the influence of alcohol or drugs, and doing so may result in a misdemeanor violation subject to 1 year of imprisonment and/or a fine of up to $1,000.[74]

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Law enforcement officers within Maryland can check the Maryland Automated Firearms Services System to verify the validity of concealed carry weapons permits. Law enforcement officers from other states can call the Licensing Division of the Maryland State Police during normal business hours to verify the validity of permits.

## Tennessee Summary: Shall-Issue State (Residents and Nonresidents)

**Approximate Number of Active Concealed Carry Permit Holders as of January 3, 2012:** 341,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 4,669,984

**Unlicensed Open Carry Permitted:** No

---

[72]Md. Code Ann., Pub. Safety, § 5-310.

[73]Md. Code Ann., Pub. Safety, § 5-313.

[74]Md. Code Ann., Pub. Safety, § 5-314.

**Permit to Carry Concealed:** Permit holders do not have to carry handguns in a concealed manner.[75]

**Length of Permit Validity:** Permits are generally valid for 4 years.[76]

**Eligibility Requirements:** The following are eligibility requirements for a permit, and the applicant must provide information about them on the application under oath.[77] In addition to being eligible to purchase or possess a handgun under state and federal law, the applicant must:

1. be a resident of Tennessee;[78]
2. have United States citizenship or be a permanent lawful resident; and
3. be at least 21 years of age.[79]
    1. Identifying information:
        a. full legal name and any aliases;
        b. addresses for the last 5 years;
        c. date of birth;
        d. Social Security number;
        e. physical description (height, weight, race, sex, hair color and eye color);
    2. Criminal History Information:
        a. that the applicant has not been convicted of or currently charged with a criminal offense that is designated as a felony,[80] or that is one of the disqualifying misdemeanors;[81]

---

[75]Tenn. Att'y Gen. Op. 05-154.

[76]Tenn. Code Ann. § 39-17-1351(n).

[77]Tenn. Code Ann. § 39-17-1351(c).

[78]A resident is someone who has lived in Tennessee for more than 30 days, is employed in the state, would qualify as registered voter, or has taken action to establish the state as his or her principal place of domicile. Tenn. Code Ann. § 55-50-102(47).

[79]Tenn. Code Ann. § 39-17-1351(b).

[80]Disqualifying felonies do not include those pertaining to antitrust violations, unfair trade practices, restraints of trade, or similar offenses related to the regulation of business practices.

[81] Disqualifying misdemeanors include driving under the influence, in Tennessee or another state, 2 or more times in the past 10 years or in the past 5 years; crimes of domestic violence; and stalking.

    b. that the applicant is not currently subject to any order of protection and, if so, the applicant must provide a copy of the order; and

    c. that the applicant is not a fugitive from justice;

3. Substance Abuse and Mental Health Information:

    a. that the applicant is not an unlawful user of or addicted to alcohol or any controlled substance, and the applicant has not been a patient in a rehabilitation program or hospitalized for alcohol or controlled substance abuse or addiction within 10 years from the date of application;

    b. that the applicant has not been adjudicated as a mental defective; has not been judicially committed to or hospitalized in a mental institution;[82] has not had a court appoint a conservator for the applicant by reason of a mental defect; has not been judicially determined to be disabled by reason of mental illness, developmental disability, or other mental incapacity; and has not, within 7 years from the date of application, been found by a court to pose an immediate substantial likelihood of serious harm because of mental illness; and

    c. that the applicant is not receiving Social Security disability benefits by reason of alcohol dependence, drug dependence, or mental disability;

1. that the applicant is not an alien and is not illegally or unlawfully in the United States;

2. that the applicant has not renounced the applicant's United States citizenship; and

3. that the applicant has not been discharged from the armed forces under dishonorable conditions.[83]

The applicant must also provide two sets of classifiable fingerprints and must be photographed for the permit.[84] The applicant must present photo identification to the department when filing the application; the name and photo must match those of the application.[85]

---

[82] Under Tennessee's procedures for involuntary commitment.

[83] Tenn. Code Ann. § 39-17-1351(c).

[84] Tenn. Code Ann. § 39-17-1351(d)(1).

[85] Tenn. Code Ann. § 39-17-1351(d)(2).

**Firearms Training Requirements:** The department must require applicants to provide proof of successful completion of an approved handgun safety course. The course must include both classroom hours and firing range hours, as well as instruction on alcohol and drugs; the effects of those substances on a person's reflexes, judgment, and ability to handle a firearm; and laws related to possession of a firearm while intoxicated.

An applicant may be exempt from the firing range and classroom hours requirements if, within the past 5 years, the applicant completed training or had been certified related to being a law enforcement officer, security guard, or in the military.[86]

Once a permit has been obtained, permit holders cannot be required to complete a handgun safety course to maintain or renew a permit.[87]

**Factors State Considers in Granting Reciprocity:** An out-of-state permit is valid in Tennessee to carry a handgun, and the holder must carry the permit at all times the person carries a handgun in Tennessee.[88]

Tennessee law requires the Commissioner of Safety to enter into reciprocity agreements with other states that require the execution of such agreements. The Commissioner is to publish a list of the states that honor the permits of Tennessee, as well as a list of the states that refuse to enter into reciprocity agreements with the state, or honor Tennessee handgun carry permits. If another state imposes conditions on Tennessee permit holder in a reciprocity agreement, the conditions will apply to the other state's permit holder when they carry a handgun in Tennessee.[89]

*Persons who move to Tennessee:* If a person with a handgun permit from another state decides to become a resident of Tennessee, the person must obtain a Tennessee handgun permit within 6 months. If the state the person moved from has substantially similar permit eligibility requirements, the permit may be issued based on the fact that the person

---

[86]Tenn. Code Ann. § 39-17-1351(e).

[87]Tenn. Code Ann. § 39-17-1351(m)

[88]Tenn. Code Ann. § 39-17-1351(r)(1)-(2).

[89]Tenn. Code Ann. § 39-17-1351(r)(3).

already has a permit. If the permit application is denied in Tennessee, that person cannot carry a handgun based on the former state's permit.

*Persons who work in Tennessee:* If a person is a resident and a permit holder of another state, but is employed in Tennessee and wants to carry a handgun in Tennessee, once the person has been working in Tennessee for 6 months, the person has 6 months to obtain a Tennessee handgun permit. If the state the person has a permit from has substantially similar permit eligibility requirements, the permit may be issued based on the fact that the person already has a permit. If the application for a permit is denied in Tennessee, that person cannot carry a handgun based on the former state's permit. These provisions do not apply if the state of residence of the person employed has a reciprocity agreement with Tennessee.

**Revocation Process:** The department is required to suspend or revoke a handgun permit when its records or other evidence show that the holder:

1. is prohibited from purchasing a handgun under applicable state or federal law;
2. has not accurately disclosed material information required for permit eligibility;
3. poses a material likelihood of risk of harm to the public;
4. has been arrested for a felony that involves the use or attempted use of force, violence, or a deadly weapon, or for a felony drug offense;
5. has been convicted of a felony;
6. has violated any provision of the Tennessee code related to weapons permits;
7. has engaged in conduct that would make the holder ineligible to apply for or obtain a permit under the permit eligibility requirements;
8. has been convicted of domestic assault or other misdemeanor crime of domestic violence and is still subject to the disabilities of such a conviction;
9. is subject to a current order of protection; or
10. has been judicially committed to a mental institution or adjudicated as a mental defective.[90]

---

[90]Tenn. Code Ann. § 39-17-1352(a).

Once the department suspends or revokes a permit, the department is required to send notice to the holder and appropriate law enforcement officers. In addition to stating that the permit has been suspended or revoked, the notice must tell the holder to surrender the permit within 10 days and that it is a crime not to do so, and that the permit holder has 30 days to request a hearing, among other things.[91]

The permit holder has 10 days to surrender the permit once the holder has notice it has been surrendered or revoked. Failure to do so is a Class A misdemeanor.[92]

The permit holder has a right to have the suspension or revocation reviewed in court.[93] If the holder has been arrested and charged with certain felony offenses, including a felony offense involving violence or the use of a firearm, the court with jurisdiction over the criminal charge is required to find out if the defendant has a permit and order the surrender of the permit. On other felony charges, the permit holder can petition for a hearing to keep the permit and may retain the permit if the court determines that the permit holder will not present a material risk of physical harm to the public if released and allowed to retain the permit. If the holder is acquitted of charges, the permit is restored; if the holder is convicted, the permit is revoked. Permits are suspended during pre-trial diversion or judicial diversion.[94] Permit holders must also surrender their permits if convicted of a Class A misdemeanor for the term of the sentence imposed.[95] Permit holders who have received a notice of suspension or revocation may make a written request for review of the determination at a hearing. The hearing must be scheduled within 30 days.[96] After this determination, there is a right of review in court.[97]

---

[91]Tenn. Code Ann. § 39-17-1352(c).

[92]Tenn. Code Ann. § 39-17-1352(b).

[93]Tenn. Code Ann. § 39-17-1352(d).

[94]Tenn. Code Ann. § 39-17-1352(e).

[95]Tenn. Code Ann. § 39-17-1352(f).

[96]Tenn. Code Ann. § 39-17-1353.

[97]Tenn. Code Ann. § 39-17-1354.

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Information about the status of a Tennessee handgun permit (whether it is valid, or revoked, or there is no permit) is in the Tennessee driver's license system and the status is shown on the driver's license. However, there is no way to check all states' databases to determine the status of a permit unless the states' permits are linked to their driver's license systems.

## Texas Summary: Shall-Issue State (Residents and Nonresidents)

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 519,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 17,523,847

**Unlicensed Open Carry Permitted:** No

**Permit to Carry Concealed:** If specific eligibility and application requirements are met, the Texas Department of Public Safety is required to issue a license to the applicant.[98]

**Length of Permit Validity:** Texas licenses to carry concealed weapons expire on the first birthday of the license holder occurring after the fourth anniversary of the date of issuance, and renewed licenses expire on the license holder's birth date, 5 years after the date of the expiration of the previous license.[99]

**Eligibility Requirements:** Under Texas law, a person is eligible for a license to carry a concealed handgun if the person:

1. has been a legal resident of Texas for 6 months, or meets eligibility requirements for out-of-state residents;

---

[98]Tex. Gov't Code Ann. § 411.177(a).

[99]Tex. Gov't Code Ann. § 411.183.

2. is at least 21 years of age;[100]
3. with respect to criminal history: Is not charged with or convicted of a felony;[101] is not charged with or has not been convicted of in the past 5 years a Class A or Class B misdemeanor offense[102] or disorderly conduct or equivalent offenses; and has not been adjudicated as having engaged in delinquent conduct constituting a felony;
4. is not fugitive from justice for a felony or a Class A or Class B misdemeanor or equivalent offense;
5. is not a chemically dependent person;[103]
6. is not incapable of exercising sound judgment with respect to the proper use and storage of a handgun;[104]
7. is qualified under state and federal law to purchase a handgun;
8. has not been determined to be delinquent in paying a child support payment or taxes;

---

[100]A person at least 18 years of age is eligible if the person is a veteran of the US Armed Forces and discharged honorably, so long as the person meets the other eligibility requirements.

[101]Texas's eligibility statute gives further content to these requirements. Specifically, there is a definition for what constitutes a felony. Tex. Gov't Code Ann. § 411.172(b).

[102]Class A misdemeanors are punishable by up to 1 year in prison or a fine of $4,000, or both, Tex. Penal Code Ann. § 12.21; Class B misdemeanors are punishable by up to 6 months in prison, a fine of $2,000, or both, Tex. Penal Code Ann. § 12.22.

[103]A chemically dependent person means a person who frequently or repeatedly becomes intoxicated by excessive indulgence in alcohol or uses controlled substances or dangerous drugs so as to acquire a fixed habit and an involuntary tendency to become intoxicated or use those substances as often as the opportunity is presented. Tex. Gov't Code Ann. § 411.172.  A person is also chemically dependent and not entitled to a permit if, within the past 10 years, the person has been convicted two times of a Class B misdemeanor or greater that involves alcohol or a controlled substance as part of the crime. Tex. Gov't Code Ann. § 411.172(c). Other evidence may also show someone is a chemically dependent person.

[104]A person is incapable of exercising sound judgment with respect to the proper use and storage of a handgun if the person has been diagnosed with or suffers from certain psychiatric disorders or conditions; has been declared incompetent to manage the person's own affairs; or has entered a plea of not guilty by reason of insanity, among other things. Tex. Gov't Code Ann. § 411.172(d). Evidence that a person has a psychiatric disorder, or condition may include, for example, involuntary psychiatric hospitalization; inpatient or residential substance abuse treatment in the preceding 5-year period; or diagnoses by a physician that the person is dependent on alcohol or drugs, or has certain mental disorders including bipolar disorder, antisocial personality disorder, or chronic dementia, among others. Tex. Gov't Code Ann. § 411.172(e). The person may, however, provide a certificate from a physician stating that the disorder or condition is in remission and not likely to develop at a future time. Tex. Gov't Code Ann. § 411.172(f).

9. is not subject to a restraining order or court protective order; and
10. has not made any material misrepresentation, or failed to disclose any material fact in the permit application.[105]

**Firearms Training Requirements:** The Department of Public Safety is required to establish minimum standards for handgun proficiency, develop a course to teach proficiency, and administer examinations to measure proficiency. One part of the course is to be classroom, and the other part range instruction, where the applicant must demonstrate the applicant's ability to safely and proficiently use the applicable category of handgun.

The course must be administered by a qualified instructor. The course must include between 10 and 15 hours of instruction on 1) laws related to deadly force; 2) handgun use, proficiency, and safety; 3) nonviolent dispute resolution; and 4) proper storage practices.

The department must also develop a continuing education course for holders who want to renew a license. The course must be administrated by a qualified instructor and must include at least 4 hours of the subjects from the initial course.

The proficiency exam includes a written exam on the subjects taught in the course and a physical demonstration of proficiency and handgun safety procedures. The qualified handgun instructor may submit to the department a recommendation concerning an applicant's proficiency.[106]

Certain applicants and license holders do not have to complete the range instruction portion of the course. These include persons who are currently serving or were honorably discharged from the U.S. or Texas state military forces; and who within the last 5 years have completed a course in handgun proficiency with the military forces. Applicants and license holders that work in the criminal justice system may also avail themselves of alternative proficiency procedures.[107]

---

[105]Tex. Gov't Code Ann. § 411.172.

[106]Tex. Gov't Code Ann. § 411.188.

[107]Tex. Gov't Code Ann. §§ 411.1881-411.1882.

**Unique State Disqualifiers/Prohibitions:** Delinquent taxes or child support payment.

**Factors State Considers in Granting Reciprocity:** Texas law requires the Governor to negotiate reciprocity agreements with any other states that provide conceal carry licenses, if the Texas Attorney General determines that the authorities of the other state initiate background checks of its applicants. The background check must include a search of the FBI's National Crime Information Center database and the Interstate Identification Index.[108]

Every year, the Texas Attorney General must submit a report listing the states that the Attorney General has determined qualify for reciprocity and review the statutes of states that do not to determine whether changes to their statues are necessary to qualify.

**Revocation Process:** Licenses are to be revoked if the holder:

1. was not entitled to the license when it was issued;
2. made a material misrepresentation or failed to disclose a material fact in an application;
3. becomes ineligible, unless the only basis of ineligibility is being charged with the commission of a crime (in which case the license is suspended);
4. is convicted of an offense related to the unlawful carrying of a handgun by a license holder;
5. is determined to have engaged in conduct constituting a reason to suspend a license (listed above) after the person's license has been previously suspended twice for the same reason; or
6. the holder's fee is returned and the holder does not repay it plus $25, within 30 days of being notified.

The holder can reapply for a license after 2 years and the reason for revocation does not exist and has not existed for 2 years. A holder whose fee was returned can reapply at any time.[109]

---

[108]Tex. Gov't Code Ann. § 411.173(b).

[109]Tex. Gov't Code Ann. § 411.186.

After receiving written notice of a denial, revocation, or suspension of a license, the holder has 30 days to request a hearing before a justice of the peace acting as an administrative hearing officer. The hearing must be scheduled within 30 days of the request and held within no more than 60 days. The ruling may be appealed within 30 days to a county court.[110]

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Law enforcement officials in Texas, and other states, have access to concealed carry permit information when they run a wanted person check on permit holders. Texas law enforcement officers can also access concealed carry permit information from the computers of squad cars.

## Virginia Summary: Shall-Issue State (Residents and Nonresidents)

**Approximate Number of Active Concealed Carry Permit Holders as of December 31, 2011:** 279,000 (rounded to the nearest thousand)

**State Adult Population (age 20 or over) per U.S. 2010 Census:** 5,917,339

**Unlicensed Open Carry Permitted:** Virginia allows residents to carry firearms openly without a permit.

**Permit to Carry Concealed:** Persons wishing to apply for a concealed carry permit can apply to the clerk of the circuit court of their county or city.

**Length of Permit Validity:** 5 years[111]

**Eligibility Requirements:** The applicant must be 21 years of age or older[112] and the following persons are ineligible to be issued a permit:

*Criminal History:*

---

[110]Tex. Gov't Code Ann. § 411.180.

[111]Va Code Ann. § 18.2-308(D).

[112]Va. Code Ann. § 18.2-308(D).

1. Persons who have been convicted of a felony;
2. individuals subject to a restraining or protective order and prohibited from purchasing or transporting a firearm;
3. persons who have been adjudicated delinquent for certain crimes, unless they file a petition to the circuit court that is granted;
4. individuals who have been convicted of two or more misdemeanors within the 5 years prior to the application, if one of the misdemeanors was Class 1; if two or more of the misdemeanors are not Class 1, then the judge has discretion;
5. individuals who have been convicted of driving while under the influence or public drunkenness within the 3-year period preceding the application, or have been determined to be a habitual drunkard under Virginia law.
6. fugitives from justice;
7. individuals who have been convicted within 3 years of the application, or have a charge pending for, specified crimes, including assault, assault and battery, sexual battery, discharging a firearm, and brandishing a firearm;
8. individuals who have been convicted of or have a charge pending for stalking; and
9. Individuals who have previous convictions or adjudications of delinquency that would have been a felony if committed by an adult;[113]

*Mental Health and Substance Abuse:*

10. persons who were admitted to outpatient treatment; adjudicated mentally incapacitated or legally incompetent; or were acquitted by reason of insanity under Virginia or similar state law, unless the person was discharged or released from custody, or competency was restored, as applicable, more than 5 years prior to the date of application;
11. individuals addicted to, using, or distributing any controlled substance;
12. individuals who have received mental health treatment or substance abuse treatment in a residential setting within 5 years prior to the date of their application; and

---

[113]Va. Code Ann. § 18.2-308(E)(16). This applies where the convictions occurred within 16 years of the later of the conviction or adjudication or the release from incarceration. *Id.*

13. individuals who within the 3 years prior to the date of application were found guilty of any criminal offense set forth in Virginia's controlled substances laws, or of illegal possession or distribution of any controlled substance; this prohibitor also applies where the court find the facts sufficient for a finding of guilty but ordered probation or other conditions;[114]

*Other:*
14. aliens not lawfully admitted for permanent residence;
15. persons who have been discharged from the U.S. Armed Forces under dishonorable conditions; and
16. individuals who the court finds, by a preponderance of the evidence, based on specific acts by the applicant, are likely to use a weapon unlawfully or negligently to endanger others.[115]

This final condition provides for limited discretion to deny a permit. To support this finding, the sheriff, chief of police, or attorney for the Commonwealth may submit to the court a sworn written statement indicating the applicant is likely to use a weapon unlawfully or negligently to endanger others. This statement is to be based on personal knowledge or that of a sheriff, police officer, or assistant attorney for the Commonwealth, or a sworn statement of a competent person having personal knowledge of specific acts.

**Firearms Training Requirements:** Each applicant is required to submit proof that the applicant has demonstrated competence with a handgun. This can be satisfied in one of the following ways:

1. Completing any hunter education or hunter safety course approved by the Department of Game and Inland Fisheries or a similar agency of another state;
2. completing any National Rifle Association (NRA) firearms safety or training course;
3. completing any firearms safety or training course or class that is available to the general public that is approved by the Department of Public Safety or that uses NRA-certified instructors. The course may be offered by a law enforcement agency, a junior college, a college or

---

[114]Va. Code Ann. § 18.2-308(E).

[115]Va. Code Ann. § 18.2-308(E).

a private or public institution, academy, organization, or firearms training school;

4. completing any law enforcement firearms safety or training course or class approved by the department of public safety offered for security guards, investigators, etc;

5. presenting evidence of equivalent experience with a firearm through participation in organized shooting competition or current military service or proof of an honorable discharge from any branch of the armed services;

6. obtaining or previously having held a license to carry a firearm in Virginia or a locality, unless such license has been revoked for cause;

7. completing any firearms training or safety course or class, including an electronic, video, or on-line course, conducted by a state-certified or NRA-certified firearms instructor;

8. completing any governmental police agency firearms training course and qualifying to carry a firearm in the course of normal police duties; or

9. completing any other firearms training that the court deems adequate.

The documentation must include one of the following: a photocopy of a certificate of completion of any of the courses or classes, an affidavit from the instructor or organization that conducted the course or class attesting to the completion by the applicant, or a copy of any document that shows completion of the course or evidences participation in a firearms competition.[116]

**Factor(s) State Considers in Granting Reciprocity:** Virginia law provides for an out-of-state permit to be valid if the following requirements are met:

1. the holder is at least 21 years of age;

2. the issuing state authority provides the means for instantaneous verification of the validity permits issued within that state, accessible 24 hours a day; and

3. the requirements and qualifications of that state's law are adequate to prevent possession of a permit by persons who would be denied a

---

[116]Va. Code Ann. § 18.2-308(G).

permit in Virginia (other than the age requirements and the type of weapon authorized to be carried).[117]

The Superintendent of State Police, in consultation with the Office of the Attorney General, is required to determine whether states meet these requirements, maintain a registry of the qualifying states on the Virginia Criminal Information Network, and enter into agreements for reciprocal recognition with qualifying states. The registry is to be available to law enforcement officers for investigative purposes

**Revocation Process:** Virginia law provides for revocation of a permit for generally any offense that would disqualify a person from obtaining a permit and also provides for some specific grounds for revocation. Any person who is convicted of an offense that would disqualify that person from obtaining a permit, or who made materially false statements on the person's application, is required to forfeit his or her permit and surrender it to the court. When the Central Criminal Records Exchange obtains a record of arrest, conviction or occurrence of any other event that would disqualify a person from obtaining a concealed handgun permit, the Central Criminal Records Exchange must notify the court that issued the permit. The court will then revoke the permit of the disqualified person, and notify the State Police and the person whose permit was revoked.[118]

The permit is also required to be revoked if the permit holder is under the influence of alcohol or illegal drugs while carrying the handgun in a public place, which is guilty of a Class 1 misdemeanor. The convicting court is required to revoke the permit and notify the issuing circuit court. The permit holder is ineligible to apply for a permit for 5 years.[119]

The court must revoke the permit of a person who is admitted to outpatient treatment or adjudicated mentally incapacitated or legally incompetent under Virginia or similar state law, and must notify the State Police and the permit holder of the revocation.[120]

---

[117]Va. Code Ann. § 18.2-308(P).

[118]Va. Code Ann. § 18.2-308(J); Va. Code Ann. § 18.2-308(D).

[119]Va. Code Ann. § 18.2-308(J1). Conviction of specified crimes is prima facie evidence that the person is "under the influence" for purposes of this section. *Id.*

[120]Va. Code Ann. § 18.2-308(J4).

Virginia law provides for suspension only in limited circumstances, where a person has a felony charge pending for stalking or assault, assault and battery, sexual battery, discharging a firearm, or brandishing a firearm. In these instances, the court hearing the charge or the court that issued the permit may have the permit suspended while the charge is pending.

**Mechanism Available for Law Enforcement Officers within and outside the State to Verify the Validity of Permits Issued in This State:**

Law enforcement officials in Virginia can check the Virginia Crime Information Network to obtain information related to the status of permits issued in Virginia. Law enforcement officials from other states can run a Concealed Weapons Query in the International Justice and Public Safety Network to verify the status of permits issued in Virginia. Law enforcement officials from other states can also query the Federal Bureau of Investigation's Interstate Identification Index, or call the Duty Sergeant at the Virginia State Police to verify the validity of a Virginia permit.

# Appendix II: Objectives, Scope and Methodology

This report describes (1) the extent to which states allow concealed carry permits, and how select states' eligibility requirements and laws regarding and recognition of other states' permits differ, (2) what processes select states use to help ensure they revoke permits when holders no longer meet eligibility requirements, and (3) how law enforcement officials in select states determine whether permits they encounter are current and valid.

To address all three objectives, we conducted a case study on 9 states—Arizona, California, Florida, Georgia, Louisiana, Maryland, Tennessee, Texas, and Virginia—which we selected to illustrate a variety of applicable state laws and procedures. However the results cannot be generalized across all states. The information obtained from these case studies provides a broad understanding of the different requirements and processes states utilize in issuing permits. Our selection covers states representing each of the factors outlined below:

- States from each of the permit issue designations-states classify themselves based on their issuing laws: (1) no-issue: where concealed carry is prohibited; (2) may-issue: the issuing authority has discretion to grant concealed carry permits to eligible individuals; (3) shall-issue: a concealed carry permit must be issued if no statutory reason for denial exists; and (4) permit not required to carry concealed handguns. We selected states that issue to residents only, and states that issue to both residents and nonresidents.

- Issuing authority—states with a centralized (singular) issuing authority and decentralized—multiple issuing authorities within a state.

- Reciprocity—the number of states that have reciprocity with each other and the number of agreements in place.

- The selection includes states that represent a range of the length of time concealed carry permits are valid, as well as differing eligibility requirements such as mandatory training on a gun safety program or demonstrating proficiency of firing a handgun, and reason(s) for requesting the permit.

To determine states' concealed carry permit practices and whose permits they honor, we gathered information on permit issuing laws, issuing authorities, and reciprocity agreements for the 50 states and the District of Columbia. This report presents the states' laws as they were as of

March 2012. To obtain data on the current number of active concealed
carry permits, and the length of time a permit is valid, we contacted 48
states.[1] We also contacted the 48 states to obtain information on their
permit tracking systems, reasons for denials, and revocations. Of the 48
states, we received data from 45 states.[2] We requested data for the
period 2007 through 2011 to illustrate any trends; however some states
could not provide complete data for this period. Most states were able to
provide 2011 data. To assess the reliability of these data, we asked the
states questions about the systems they use to track the data, any steps
taken to verity accuracy, and any limitations to the data. Our analysis was
largely dependent on the availability of state data on the number of
concealed carry permits. In some cases, statewide data were not
available, and in other cases only data from certain time periods were
available. As a result of these limitations, we determined that the data
were sufficiently reliable solely to illustrate a minimum number of total
active permits and approximate number of state specific permits.

In addition, we obtained information from and interviewed federal
agencies with firearms-related experience and law enforcement
responsibilities—the Bureau of Alcohol, Tobacco, Firearms, and
Explosives (ATF) and the Federal Bureau of Investigations (FBI). We
obtained information from and interviewed FBI headquarters officials on
their audits of select states that utilize federal databases that states query
when screening concealed carry permit applicants. We obtained
information and interviewed ATF headquarters officials and field special
agents on their experience and perspective on state permits. In addition,
we interviewed non-governmental groups representing a cross section of
different views on concealed carry permit issues to obtain information
regarding a historical perspective of carry conceal issues.[3]

To obtain more detailed information about specific state laws and
procedures for carry concealed permits, we met with officials at various

---

[1] The remaining 2 states (Illinois and Vermont) do not issue concealed carry permits, so
the number of valid permits does not apply to them. The District of Columbia does not
issue concealed carry permits.

[2] Three states did not provide data, 1-state does not capture the data centrally (Alabama),
2 other states did not respond to our requests for information (New Hampshire and North
Dakota).

[3] We interviewed organizations such as the Brady Campaign, Gun Owners of America,
Mayors Against Illegal Guns, and the National Rifle Association.

state and local agencies in the 9 states in our case study. We obtained
and analyzed information about state laws, eligibility requirements, and
procedures including, (1) how states screen, approve, and deny permit
applicants and (2) factors considered by states when entering into
reciprocity agreements with other states and the number of current
reciprocity agreements in place. We also obtained and analyzed state
data on state-maintained statistics on the number of active and denied
permits, and other firearms-related information such as specific
requirements and training guidance.

To determine how the 9 states we selected for our case study monitor
active holders to ensure they remain eligible to possess firearms and
what actions the states take to revoke permits when permit holders
become ineligible, we obtained information from the 9 states that issue
permits: Arizona, California, Florida, Georgia, Louisiana, Maryland,
Tennessee, Texas, and Virginia. Of these 9, 3 states (California, Georgia,
and Virginia) have a decentralized process for issuing permits. We
obtained information and interviewed the issuing officials (county sheriffs,
probate court staff, and circuit court staff) from three to five jurisdictions
per state. From the 9 states, we selected for our case study that issue
permits, we obtained and analyzed available data on the number of
permits revoked, and the extent to which states recovered revoked
permits from permit holders. We also interviewed state and local officials
responsible for issuing permits to obtain information on applicable laws
and procedures for monitoring, and revoking permits.

To identify how law enforcement officials in the 9 select states that issue
permits determine whether permits they encounter are current and valid,
we obtained information on the physical features embedded in each state's
permit, and the state and federal systems utilized to check the status of
permits, and we interviewed state and local law enforcement officials
across the 9 states to obtain information on processes they use to validate
permits. These law enforcement officials included those representing state
department of law enforcement, state departments of public safety, state
police or state highway patrol, county sheriffs, and city police.

We conducted our work from August 2011 through July 2012 in
accordance with all sections of GAO's Quality Assurance Framework that
are relevant to our objectives. The framework requires that we plan and
perform the engagement to obtain sufficient and appropriate evidence to
meet our stated objectives and to discuss any limitations in our work. We
believe that the information and data obtained, and the analysis
conducted, provide a reasonable basis for any findings in this product.

# Appendix III: State Issuing Authority, as of March 2012

| State | Type of authority | Issuing authority | Approximate number of authorities (if decentralized) |
|---|---|---|---|
| Alabama | Decentralized | County sheriffs | 67 |
| Alaska | Centralized | Department of Public Safety | 1 |
| Arizona | Centralized | Department of Public Safety | 1 |
| Arkansas | Centralized | Arkansas State Police | 1 |
| California | Decentralized | County or city sheriffs or other heads of municipal police departments | 60+ [a] |
| Colorado | Decentralized | County sheriffs | 64 |
| Connecticut | Centralized | Specialized Licensing and Firearms Unit | 1 |
| Delaware | Decentralized | Superior courts | 3 |
| Florida | Centralized | Department of Agriculture and Consumer Services | 1 |
| Georgia | Decentralized | County probate courts | 159 |
| Hawaii | Decentralized | County or municipal police chiefs | 4 |
| Idaho | Decentralized | County sheriffs | 44 |
| Illinois | Not applicable | Not applicable | N/A |
| Indiana | Decentralized | Heads of local law enforcement municipalities | 556 |
| Iowa | Decentralized for residents/centralized for nonresidents | County sheriffs for residents, Commissioner of Public Safety for nonresidents | 99 |
| Kansas | Centralized | Attorney General's Office | 1 |
| Kentucky | Centralized | Kentucky State Police | 1 |
| Louisiana | Centralized | Deputy Secretary of the Department of Public Safety and Corrections | 1 |
| Maine | Decentralized for residents/centralized for nonresidents | Mayor and municipal officers or councilors of a city or town for residents, Chief of State Police for nonresidents | 488 |
| Maryland | Centralized | Licensing Division of the State Police Department | 1 |
| Massachusetts | Decentralized for residents/centralized for nonresidents | Local police or Colonel of the State Police | 351 |
| Michigan | Decentralized | Counties Concealed Weapon Licensing Boards | 83 |
| Minnesota | Decentralized | County sheriffs | 87 |
| Mississippi | Centralized | Department of Public Safety | 1 |
| Missouri | Decentralized | County or city sheriffs | 115 |
| Montana | Decentralized | County sheriffs | 56 |
| Nebraska | Centralized | Nebraska State Patrol | 1 |
| Nevada | Decentralized | County sheriffs | 17 |

| State | Type of authority | Issuing authority | Approximate number of authorities (if decentralized) |
|-------|-------------------|-------------------|------------------------------------------------------|
| New Hampshire | Decentralized for residents/centralized for nonresidents | Local mayor or police chief for residents; Director of State Police for nonresidents | 235+[a] |
| New Jersey | Decentralized | County superior courts | 21 |
| New Mexico | Centralized | Department of Public Safety | 1 |
| New York | Decentralized | Licensing officer of the city or county of applicant's primary residence or place of business | 50+ |
| North Carolina | Decentralized | County sheriffs | 100 |
| North Dakota | Centralized | Bureau of Criminal Investigation | 1 |
| Ohio | Decentralized | County sheriffs | 88 |
| Oklahoma | Centralized | Bureau of Investigation | 1 |
| Oregon | Decentralized | County sheriffs | 36 |
| Pennsylvania | Decentralized | County sheriffs or city police chiefs | 67+[a] |
| Rhode Island | Decentralized | Attorney General's Office and city chiefs of police | 39 |
| South Carolina | Centralized | Law Enforcement Division | 1 |
| South Dakota | Decentralized | County sheriffs | 66 |
| Tennessee | Centralized | Department of Safety and Homeland Security | 1 |
| Texas | Centralized | Department of Public Safety | 1 |
| Utah | Centralized | Bureau of Criminal Identification | 1 |
| Vermont | Not applicable | Not applicable | N/A |
| Virginia | Decentralized for residents/centralized for nonresidents | Clerk of Circuit Courts for residents, Department of State Police for nonresidents | 120 |
| Washington | Decentralized | Chiefs of police of municipalities, county sheriffs | 39 +[a] |
| Washington D.C. | Not applicable | Not applicable (N/A) | N/A |
| West Virginia | Decentralized | County sheriffs | 55 |
| Wisconsin | Centralized | Department of Justice | 1 |
| Wyoming | Centralized | Attorney General's Office through the Division of Criminal Investigation | 1 |

Source: GAO analysis of state laws and publicly available state information

[a]For states that have a + symbol beside the number of authorities, the approximate number of authorities may be significantly higher.

While there is no federal law specifically addressing the issuance of concealed carry permits, 48 states have passed laws allowing the state to issue citizens concealed carry permits. A few states do not require a permit to carry certain firearms in public within that particular state, but issue permits for reciprocity purposes in other states. See table 6 below.

**Table 6: State Concealed Carry Permit Designation, as of March 2012**

| State-by-state issue designation | Permit not required | Shall-issue to residents and nonresidents | Shall-issue to residents only | Limited discretion to deny a permit[a] | May-issue to residents and nonresidents | May-issue to residents only | Nonresidents subject to certain requirements[b] | No-issue |
|---|---|---|---|---|---|---|---|---|
| Alabama | | | | | | X | | |
| Alaska | X | | X | | | | | |
| Arizona | X | X | | | | | | |
| Arkansas | | | X | X | | | | |
| California | | | | | X | | X | |
| Colorado | | | X | X | | | | |
| Connecticut | | | | | X | | | |
| Delaware | | | | | | X | | |
| Florida | | X | | | | | | |
| Georgia | | | X | X | | | | |
| Hawaii | | | | | X | | | |
| Idaho | | X | | | | | | |
| Illinois | | | | | | | | X |
| Indiana | | X | | X | | | X | |
| Iowa | | X | | X | | | | |
| Kansas | | | X | | | | | |
| Kentucky | | | X | | | | | |
| Louisiana | | | X | | | | | |
| Maine | | X | | X | | | | |
| Maryland | | | | | X | | | |
| Massachusetts | | | | | X | | X | |
| Michigan | | | X | X | | | | |
| Minnesota | | X | | X | | | | |
| Mississippi | | | X | | | | | |
| Missouri | | | X | X | | | | |
| Montana | | | X | X | | | | |
| Nebraska | | | X | | | | | |
| Nevada | | X | | | | | | |

| State-by-state issue designation | Permit not required | Shall-issue to residents and nonresidents | Shall-issue to residents only | Limited discretion to deny a permit[a] | May-issue to residents and nonresidents | May-issue to residents only | Nonresidents subject to certain requirements[b] | No-issue |
|---|---|---|---|---|---|---|---|---|
| New Hampshire | | X | | X | | | | |
| New Jersey | | | | | X | | | |
| New Mexico | | | X | | | | | |
| New York | | | | | X | | X | |
| North Carolina | | | X | | | | | |
| North Dakota | | X | | | | | | |
| Ohio | | | X | | | | | |
| Oklahoma | | | X | | | | | |
| Oregon | | X | | X | | | X | |
| Pennsylvania | | X | | X | | | X | |
| Rhode Island[c] | | X | | | X | | X | |
| South Carolina | | X | | | | | X | |
| South Dakota | | | X | | | | | |
| Tennessee | | X | | | | | X | |
| Texas | | X | | | | | | |
| Utah | | X | | X | | | X | |
| Vermont | X | | | | | | | |
| Virginia | | X | | X | | | | |
| Washington | | X | | | | | | |
| Washington D.C. | | | | | | | X | |
| West Virginia | | | X | | | | | |
| Wisconsin | | | X | | | | | |
| Wyoming | X | | X | X | | | | |

Source: GAO analysis of state laws.

[a]These states are "shall-issue" states, but state law provides the licensing authority with limited discretion in specified circumstances to deny a permit. For example, based on demonstrated evidence, the applicant is likely to use a weapon unlawfully or in such other manner that would endanger the applicant or others.

[b]The laws of these states provide authority to issue permits to non-residents on a limited basis, for example, to non-residents who own property in the state, who are employed in the state, or who have a permit from their home state, among other requirements. Oregon shall issue to residents, and may issue to residents of contiguous states who have a compelling business interest or other legitimate demonstrated need.

[c]Rhode Island law provides for two mechanisms for obtaining a permit: the Rhode Island Attorney General has "may issue" authority to issue permits under R.I. Gen. Laws § 11-47-18, and cities and towns have "shall-issue" authority, with limited discretion, to issue a permit, under R.I. Gen. Laws § 11-47-11.

# Appendix V: Number of Valid Permits

**Table 7: Number of Valid Permits (as Reported by States) as of December 31, 2011, unless noted otherwise**

| State | Approximate number of active permits (as of December 31, 2011 or unless otherwise noted) | Approximate adult population (age 20 or over) per U.S. 2010 Census | Ratio of active permits issued to adult population (age 20 or over) | Length of time permit/license valid (years) for initial applicants |
|---|---|---|---|---|
| Alabama[a] | Not available | 3,503,000 | Not available | 1 year |
| Alaska | 7,000 | 502,000 | 1.4% | 5 years |
| Arizona[b] | 163,000 | 4,572,000 | 3.6 | 5 years |
| Arkansas | 111,000 | 2,120,000 | 5.2 | 5 years |
| California[b] (as of 09/01/11) | 35,000 | 26,802,000 | 0.1 | 2 years ; 4 years for peace officers; 3 years for judges |
| Colorado | 90,000 | 3,665,000 | 2.5 | 5 years |
| Connecticut[b] | 165,000 | 2,658,000 | 6.2 | 5 years |
| Delaware | 5,000 | 664,000 | 0.8 | 3 years |
| Florida[b] | 887,000 | 14,288,000 | 6.2 | 7 years |
| Georgia | 600,000 | 6,906,000 | 11.5 | 5 years |
| Hawaii[b,c] | 0 | 1,022,000 | 0 | 1 year |
| Idaho[b] | 76,000 | 1,092,000 | 7.0 | 4 years if issued before 7/1/06; 5 yrs if after 7/1/06 |
| Illinois | Not applicable | Not applicable | Not applicable | Not applicable |
| Indiana[b] | 406,000 | 4,677,000 | 8.7 | 4 years; lifetime for honorably retired law enforcement |
| Iowa[b] (estimate based on number of issuances from 2007 to 2011) | 243,000 | 2,226,000 | 10.9 | 5 years |
| Kansas | 39,000 | 2,042,000 | 1.9 | 4 years |
| Kentucky | 170,000 | 3,193,000 | 5.3 | 5 years |
| Louisiana (Estimate) | 40,000 | 3,279,000 | 1.2 | 5 years |
| Maine[b] | 4,000 | 1,017,000 | 0.4 | 4 years |
| Maryland[b] (as of 10/1/11) | 12,000 | 4,257,000 | 0.3 | 2 years; 3 years after renewal |
| Massachusetts[b] (as of 2/1/12) | 251,000 | 4,926,000 | 5.1 | 6 years |
| Michigan (as of 1/5/12) | 296,000 | 7,235,000 | 4.1 | 5 years |
| Minnesota[b] | 91,000 | 3,873,000 | 2.3 | 5 years |
| Mississippi | 43,000 | 2,118,000 | .2 | 4 years |
| Missouri (as of 1/20/12) | 133,000 | 4,388,000 | 3.0 | 3 years |
| Montana | 27,000 | 738,000 | 3.7 | 4 years |

| State | Approximate number of active permits (as of December 31, 2011 or unless otherwise noted) | Approximate adult population (age 20 or over) per U.S. 2010 Census | Ratio of active permits issued to adult population (age 20 or over) | Length of time permit/license valid (years) for initial applicants |
|---|---|---|---|---|
| Nebraska | 13,000 | 1,314,000 | 1.0 | 5 years |
| Nevada[b] | 55,000 | 1,964,000 | 2.8 | 5 years |
| New Hampshire[a,b] | Not available | 991,000 | Not available | 4 years |
| New Jersey[b] | 32,000 | 6,501,000 | At least 0.5 | 2 years |
| New Mexico (estimate) | 22,000 | 1,479,000 | 1.5 | 4 years (5 years for retired law enforcement) |
| New York[b,d] | | 14,481,000 | | 3 years in New York City; 5 years for Nassau, Suffolk, and Westchester; Until Revoked for all other counties |
| North Carolina | 240,000 | 6,977,000 | 3.4 | 5 years |
| North Dakota[a,b] | Not available | 501,000 | Not available | 5 years |
| Ohio (as of 1/1/12) | 270,000 | 8,469,000 | 3.2 | 5 years on/after 3/14/07; 4 years prior to 3/14/07 |
| Oklahoma (as of 1/26/12) | 122,000 | 2,710,000 | 4.5 | 5 or 10 years (optional if no prohibitions) |
| Oregon[b] | 147,000 | 2,859,000 | 5.1 | 4 years |
| Pennsylvania[b] | 786,000 | 9,523,000 | 8.3 | 5 years |
| Rhode Island[b] (does not include permits issued by localities) | 4,000 | 791,000 | At least 0.5 | 4 years |
| South Carolina[b] (as of 12/26/11) | 148,000 | 3,401,000 | 4.4 | 4 years |
| South Dakota | 62,000 | 587,000 | 10.6 | 4 years |
| Tennessee[b] (as of 1/3/12) | 341,000 | 4,670,000 | 7.3 | 4 years |
| Texas[b,e] | 519,000 | 17,524,000 | 3.0 | 4 years; 5 years after renewal |
| Utah[b] | 347,000 | 1,801,000 | 19.3 | 5 years |
| Vermont | Not applicable | Not applicable | Not applicable | Not applicable |
| Virginia[b] | 279,000 | 5,917,000 | 4.7 | 5 years |
| Washington[b] | 351,000 | 4,955,000 | 7.1 | 5 years |
| Washington D.C. | Not applicable | Not applicable | Not applicable | Not applicable |
| West Virginia | 92,000 | 1,414,000 | 4.7 | 5 years |
| Wisconsin | 40,000 | 4,185,000 | 1.0 | 5 years |
| Wyoming | 23,000 | 412,000 | 5.6 | 5 years |

Source: GAO analysis of state reported data and state laws.

[a]States that have missing data either do not track, could not provide, or declined to provide the information requested.

[b]These states issue permits to residents and nonresidents, and the approximate number for these states includes permits issued to both groups. As a result, the ratios of active permit holders to adult population for these states reflect permit holders that do not reside in the state, which may result in a higher percentage.

[c]Of the four counties that issue permits in Hawaii, only two provided information.

[d]New York has no mechanism to purge inactive files. The New York State Police became the repository for concealed carry permit data in 1936. As of December 31, 2011, New York had 1,281,662 applications on file since 1936. However, this number is not an accurate count of people who possess a valid carry concealed weapons permit from the state of New York. Some permit holders may have died and some permit holders may have had their permits revoked or cancelled since 1936.

[e]Texas' approximate number of nonresident permits is as of September 22, 2011

Of the 48 states that issue concealed carry permits, 26 issue to residents and nonresidents of their state, and of these 26 states that issue to nonresidents, 10 provided data on the number of valid nonresident permits, as shown in the table.

**Table 8: Status for States that issue to Nonresidents, as of December 31, 2011, unless otherwise noted**

| State | Approximate total number of active permits[a] | Approximate number of active resident permits[a] | Approximate number of active nonresident permits[a] | Approximate percentage of nonresident permit holders |
|---|---|---|---|---|
| Arizona | 163,000 | Not available | Not available | |
| California (as of 09/01/11) | 37,000 | 37,000 | Not available | |
| Connecticut | 165,000 | 148,000 | 16,000 | 9.7% |
| Florida | 887,000 | 784,000 | 104,000 | 11.7 |
| Hawaii[b] | 0 | 0 | 0 | 0.0 |
| Idaho | 77,000 | 76,000 | 700 | 0.9 |
| Indiana | 406,000 | 406,000 | 50 | 0.0 |
| Iowa (estimate based on number of issuances from 2007 to 2011) | 243,000 | Not available | Not available | |
| Maine | 6,000 | 4,000 | 2,000 | 33.3 |
| Maryland | 12,000 | Not available | Not available | |
| Massachusetts (as of 2/1/12) | 251,000 | 250,000 | 1,000 | 0.4 |
| Minnesota | 91,000 | Not available | Not available | |
| Nevada | 55,000 | 50,000 | 6,000 | 10.9 |
| New Hampshire | Not available | Not available | Not available | |
| New Jersey | 32,000 | Not available | Not available | |
| New York[c] | Not available | Not available | Not available | |
| North Dakota | Not available | Not available | Not available | |
| Oregon | 147,000 | Not available | Not available | |
| Pennsylvania | 786,000 | Not available | Not available | |
| Rhode Island (does not include permits issued by localities) | 4,000 | Not available | Not available | |
| South Carolina (as of 12/26/11) | 148,000 | Not available | Not available | |
| Tennessee (as of 1/3/12) | 341,000 | Not available | Not available | |
| Texas[d] | 519,000 | 515,000 | 4,000 | 0.8 |

| State | Approximate total number of active permits[a] | Approximate number of active resident permits[a] | Approximate number of active nonresident permits[a] | Approximate percentage of nonresident permit holders |
|-------|-----------------------------------------------|--------------------------------------------------|-----------------------------------------------------|------------------------------------------------------|
| Utah | 347,000 | 147,000 | 201,000 | 57.9 |
| Virginia | 279,000 | 274,000 | 5,000 | 1.8 |
| Washington | 351,000 | Not available | Not available | |

Source: GAO analysis of state reported data.

Notes: Differences in total are due to the rounding of numbers.

[a]States that have missing data either do not track, could not provide, or declined to provide the information requested.

[b]Of the four counties that issue permits in Hawaii, only two provided information.

[c]New York has no mechanism to purge inactive files. The New York State Police became the repository for concealed carry permit data in 1936. As of December 31, 2011, New York had 1,281,662 applications on file since 1936. However, this number is not an accurate count of people who possess a valid carry concealed weapons permit from the state of New York. Some permit holders may have died and some permit holders may have had their permits revoked or cancelled since 1936.

[d]Texas' approximate number of nonresident permits is as of September 22, 2011

# Appendix VII: State Reciprocity, as of March 2012

| State | Permits from other states that are recognized by this state | States that recognize permits issued in this state |
|-------|-------------------------------------------------------------|----------------------------------------------------|
| Alabama | AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, MI, MS, MO, NH, NC, ND, OK, SD, TN, TX, UT, WY (23) | AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, MI, MS, MO, NH, NC, ND, OK, SD, TN, TX, UT, WY (23) |
| Alaska | AL, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WV, WY (35) |
| Arizona | AL, AK, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WI, WV, WY (35) |
| Arkansas | AL, AK, AZ, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, ME, MI, MN, MS, MO, MT, NE, NV, NH, NM, ND, NC, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (38) | AL, AK, AZ, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, ME, MI, MN, MS, MO, MT, NE, NV, NH, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WV, WY (37) |
| California | CA does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NE, NC, OK, SD, TN, TX, UT, WI (17) |
| Colorado | AL, AK, AZ, AR, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NH, NM, NC, ND, OK, PA, SD, TN, TX, UT, WI, WY (30) | AL, AK, AZ, AR, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NH, NM, NC, ND, OK, PA, SD, TN, TX, UT, WI, WY (30) |
| Connecticut | CT does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NE, NC, OK, SD, TN, TX, UT, WI (17) |
| Delaware | AK, AZ, AR, CO, FL, KY, ME, MI, MO, NM, NC, ND, OH, OK, TN, TX, UT, VA, WV (19) | AK, AZ, AR, CO, FL, ID, IN, IA, KY, ME, MI, MO, NM, NC, ND, OH, OK, SD, TN, TX, UT, VA, WV (23) |
| Florida | AL, AK, AZ, AR, CO, DE, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VT, VA, WA, WV, WY (35) | AL, AK, AZ, AR, CO, DE, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WV, WY (33) |
| Georgia | AL, AK, AR, AZ, CO, FL, IA, ID, IN, KY, LA, MI, MS, MO, MT, ND, NH, NC, OK, PA, SD, TN, TX, UT, WI, WY (26) | AL, AK, AZ, AR, CO, FL, ID, IN, IA, KY, LA, MI, MS, MO, MT, NH, NC, ND, OK, PA, SD, TN, TX, UT, WI, WY (26) |
| Hawaii | HI does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KS, KY, MI, MO, NE, NC, OK, SD, TN, TX, UT, WI (17) |
| Idaho | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, FL, GA, IN, IA, KY, LA, MI, MO, MT, NE, NH, NC, ND, OH, OK, PA, SD, TN, TX, UT, WI, WY (27) |
| Illinois | IL does not honor permits issued in other states. | Not applicable |
| Indiana | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, FL, GA, ID, IA, KY, LA, MI, MS, MO, MT, NH, NC, ND, OK, PA, SD, TN, TX, UT, WI, WY (26) |
| Iowa | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, KY, LA, MI, MO, MT, NE, NH, NC, ND, OK, PA, SD, TN, TX, UT, WI, WY (26) |

| State | Permits from other states that are recognized by this state | States that recognize permits issued in this state |
|-------|------------------------------------------------------------|----------------------------------------------------|
| Kansas | AK, AZ, AR, CO, FL, HI, KY, LA, MI, MN, MO, NE, NV, NJ, NM, NC, ND, OH, OK, SC, TN, TX, WV (23) | AK, AZ, AR, CO, FL, ID, IN, IA, KY, LA, MI, MN, MO, MT, NE, NV, NC, ND, OH, OK, SC, SD, TN, TX, UT, WI, WV (27) |
| Kentucky | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KS, LA, MI, MN, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WI, WV, WY (36) |
| Louisiana | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KS, KY, ME, MI, MN, MS, MO, MT, NE, NM, NV, NH, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VT, VA, WA, WI, WV, WY (38) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KS, KY, ME, MI, MN, MS, MO, MT, NE, NV, NH, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (36) |
| Maine | AR, DE, LA, MI, ND, PA, SD, WY (8) | AK, AZ, AR, DE, ID, IN, IA, KY, LA, MI, MO, NE, NC, ND, OK, PA, SD, TN, UT, WY (20) |
| Maryland | MD does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NC OK, SD, TN, TX, UT, WI (16) |
| Massachusetts | MA does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NC, OK, SD, TN, TX, UT (15) |
| Michigan | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, ME, MN, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (38) |
| Minnesota | AK, AR, KS, KY, LA, MI, MO, NM, NV, OH, OK, TN, TX, UT, WY (15) | AK, AZ, AR, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NM, NC, OK, SD, TN, UT, VA, WI, WY (23) |
| Mississippi | AL, AK, AZ, AR, CO, FL, GA, IN, KY, LA, MI, MN, MO, MT, NH, NC, OK, SD, TN, TX, UT, VA, WA, WV, WY (25) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, MI, MO, MT, NH, NC, OK, SD, TN, TX, UT, VA, WA, WV, WY (26) |
| Missouri | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MS, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WV, WY (36) |
| Montana | AK, AZ, AR, CA, CO, CT, FL, GA, ID, IN, IA, KS, KY, LA, MD, MA, MI, MN, MS, MO, NE, NV, NJ, NM, NY, NC, ND, OH, OK, OR, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (41) | AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, MI, MS, MO, NE, NM, NC, ND, OK, PA, SD, TN, TX, UT, VA, WI, WY (27) |
| Nebraska | AK, AZ, AR, CA, CO, CT, FL, HI, ID, IA, KS, KY, LA, ME, MI, MN, MT, MO, NV, NJ, NM, NC, ND, OH, OK, OR, RI, SC, TN, TX, UT, VA, WV, WY (34) | AK, AZ, AR, CO, FL, ID, IN, IA, KS, KY, LA, MI, MO, MT, NV, NC, ND, OH, OK, SD, TN, TX, UT, VA, WI, WY (26) |
| Nevada | AK, AZ, AR, KS, KY, LA, MI, MO, NE, NM, NC, OH, TN, RI, WV (15) | AK, AZ, AR, ID, IN, IA, KS, KY, LA, MI, MN, MO, MT, NE, NC, OK, SD, TN, TX, UT (20) |
| New Hampshire | AL, AK, AZ, AR, CO, FL, GA, IA, ID, IN, KY, LA, MI, MO, MS, NC, ND, OK, PA, TN, UT, WY (22) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, MI, MS, MO, NC, ND, OK, PA, SD, TN, UT, WY (23) |
| New Jersey | NJ does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KS, KY, MI, MO, MT, NE, NC, OK, SD, TN, TX, UT (17) |
| New Mexico | AK, AZ, CO, DE, FL, KY, MI, MN, MO, MT, NC, ND, OH, OK, SC, TN, TX , VA, WY (19) | AK, AZ, AR, CO, DE, FL, ID, IN, IA, KS, KY, LA, MI, MN, MO, MT, NE, NV, NC, ND, OH, OK, SD, TN, TX, UT, VA, WV, WI, WY (30) |

| State | Permits from other states that are recognized by this state | States that recognize permits issued in this state |
|---|---|---|
| New York | NY does not honor permits issued in other states | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NC, OK, SD, TN, TX, UT, WI (16) |
| North Carolina | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NV, NH, NM, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (36) |
| North Dakota | AL, AK, AZ, AR, CO ,CT, DE, FL, GA, HI, ID, IA, LA, ME, MI, MO, MT, NE, NH, NM, NC, OH, OK, PA, SC, SD, TN, TX, UT, VA, WA, WI, WV, WY (35) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, ME, MI, MO, MT, NE, NH, NM, NC, OH, OK, PA, SD, TN, TX, UT, VA, WA, WV, WI, WY (34) |
| Ohio | AK, AZ, AR, DE, FL, ID, IN, IA, KS, KY, LA, MI, MN, NC, ND, OK, SC, TN, UT, VA, WA, WV, WY (23) | AK, AZ, AR, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MO, MT, NE, NV, NM, NC, ND, OK, SC, SD, TN, UT, VA, WA, WV, WY (29) |
| Oklahoma | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OR, PA, RI, SC, SD, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MS, MO, MT, NE, NH, NM, NC, ND, OH, PA, SC, SD, TN, TX, UT, VA, WA, WV, WY (35) |
| Oregon | OR does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, MT, NE, NC, OK, SD, TN, UT (15) |
| Pennsylvania | AK, AZ, AR, CO, FL, GA, IA, ID, IN, KY, LA. ME, MI, MO, MT, ND, NH, NC, OK, SD, TN, TX, UT, VA, WI, WV, WY (27) | AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, ME, MI, MO, MT, NH, NC, ND, OK, SD, TN, TX, UT, VA, WV, WI, WY (27) |
| Rhode Island | RI does not honor permits issued in other states. | AK, AZ, ID, IN, IA, KY, MI, MO, NE, NV, NC, OK, SD, TN, TX, UT (16) |
| South Carolina | AK, AZ, AR, FL, KS, KY, LA, MI, MO, NC, OH, OK, TX, TN, VA, WV, WY (17) | AK, AZ, AR, FL, ID, IN, IA, KS, KY, LA, MI, MO, MT, NE, NM, NC, ND, OH, OK, SD, TN, TX, UT, VA, WV, WY (26) |
| South Dakota | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, TN, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, ME, MI, MS, MO, MT, NC, ND, OK, PA, TN, TX, UT, VA, WV, WY (27) |
| Tennessee | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, OH, OK, OR, PA, RI, SC, SD, TX, UT, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TX, UT, VA, WA, WV, WI, WY (37) |
| Texas | AL, AK, AZ, AR, CA, CO, CT, DE, FL, GA, HI, IA, ID, IN, KS, KY, LA, MA, MD, MI, MS, MO, MT, NE, NM, NC, ND, NJ, NV, NY, OK, PA, RI, SC, SD, TN, UT, VA, WA, WV, WY (41) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, MI, MN, MS, MO, MT, NE, NM, NC, ND, OK, PA, SC, SD, TN, UT, VA, WI, WV, WY (33) |
| Utah | AL, AK, AZ, AR, CA, CO ,CT, DE, FL, GA, HI, ID, IA, IN, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, MT, NE, NV, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, VA, WA, WV, WI, WY (47) | AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KY, LA, MI, MN, MS, MO, MT, NE, NH, NC, ND, OH, OK, PA, SD, TN, TX, VA, WA, WV, WI, WY (34) |
| Vermont | VT does not require concealed weapons carriers to have a permit. Therefore, reciprocity does not apply in the state. Local statutes may vary. | Not applicable |

| State | Permits from other states that are recognized by this state | States that recognize permits issued in this state |
|---|---|---|
| Virginia | AK, AZ, AR, DE, FL, KY, LA, MI, MN, MS, MO, MT, NE, NC, ND, NM, OH, OK, PA, SC, SD, TN, TX, UT, WA, WV, WY (27) | AK, AZ, AR, DE, FL, ID, IN, IA, KY, LA, MI, MS, MO, MT, NE, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, WV, WI, WY (29) |
| Washington | AR, FL, LA, MI, MS, MO, NC, ND, OH, OK, TN, UT (12) | AK, AZ, AR, FL, ID, IN, IA, KY, LA, MI, MS, MO, MT, NC, ND, OH, OK, SD, TN, TX, UT, VA, WI (23) |
| Washington D.C. | DC does not honor permits issued in other states. | Not applicable |
| West Virginia | AK, AZ, AR, DE, FL, KS, KY, LA, MI, MS, MO, NM, NC, ND, OK, OH, PA, SC, SD, TX, TN, UT, VA, WI (24) | AK, AZ, AR, DE, FL, ID, IN, IA, KS, KY, LA, MI, MS, MO, MT, NE, NV, NC, ND, OH, OK, PA, SC, SD, TX, TN, UT, VA, WY (29) |
| Wisconsin | AZ, AR, CA, CO, CT, GA, HI, ID, IA, IN, KS, KY, LA, MD, MI, MN, MT, NE, NM, NY, NC, ND, PA, TN, TX, UT, VA, WA, WY (29) | AK, AZ, AR, CO, GA, ID, IN, IA, KY, LA, MI, MS, MO, MT, NE, NV, NH, NC, ND, OK, PA, SD, TN, UT, WV (26) |
| Wyoming | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, ME, MI, MN, MS, MO, MT, NE, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WV (33) | AL, AK, AZ, AR, CO, FL, GA, ID, IN, IA, KY, LA, ME, MI, MN, MS, MO, MT, NE, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VA, WI (33) |

Source: GAO analysis of publically available state information.

# Appendix VIII: GAO Contacts and Staff Acknowledgments

## GAO Contacts

Carol R. Cha (202) 512-4456 or chac@gao.gov

Eileen R. Larence (202) 512-6510 or larencee@gao.gov

## Staff Acknowledgments

In addition to the contacts named above, Kirk Kiester (Assistant Director), Aditi S. Archer, Willie Commons III, Michele C. Fejfar, Sally P. Gilley, Andrew C. Moore, and Janet G. Temko made significant contributions to the work. Also contributing to this report were Katherine M. Davis, Eric Hauswirth, Linda S. Miller, and Robert Robinson.

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's website (www.gao.gov). Each weekday afternoon, GAO posts on its website newly released reports, testimony, and correspondence. To have GAO e-mail you a list of newly posted products, go to www.gao.gov and select "E-mail Updates." |
| **Order by Phone** | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's website, http://www.gao.gov/ordering.htm. |
| | Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. |
| | Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| **Connect with GAO** | Connect with GAO on Facebook, Flickr, Twitter, and YouTube. Subscribe to our RSS Feeds or E-mail Updates. Listen to our Podcasts. Visit GAO on the web at www.gao.gov. |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact: |
| | Website: www.gao.gov/fraudnet/fraudnet.htm |
| | E-mail: fraudnet@gao.gov |
| | Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Katherine Siggerud, Managing Director, siggerudk@gao.gov, (202) 512-4400, U.S. Government Accountability Office, 441 G Street NW, Room 7125, Washington, DC 20548 |
| **Public Affairs** | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800 U.S. Government Accountability Office, 441 G Street NW, Room 7149 Washington, DC 20548 |



Please Print on Recycled Paper.